627 A.2d 789

COMMONWEALTH of Pennsylvania

v.

Thomas E. URBANSKI, Appellant.

Superior Court of Pennsylvania.

Argued Feb. 19, 1993.

Filed July 8, 1993.

Aaron C. Finestone, Philadelphia, for appellant.

Anthony V. Pomeranz, Asst. Dist. Atty., Philadelphia, for Com., appellee.

508

Before BECK, POPOVICH and BROSKY, JJ.

BECK, Judge:

We decide, *inter alia,* whether *Commonwealth v. Kohl,* 532 Pa. 152, 615 A.2d 308 (1992), invalidated the entire implied consent provision of the driving under the influence statute, 75 Pa.C.S.A. § 1547(a). We conclude that it did not and therefore affirm the trial court.

In this appeal from the judgments of sentence imposed for third degree murder and related DUI offenses, appellant claims that the results of his blood tests were inadmissible and, therefore, he is entitled to a new trial. In addition, appellant asserts that the Commonwealth failed to present sufficient evidence of malice to sustain a conviction for third degree murder of his wife or to prove that his actions were the direct cause of the victim's death. Lastly, appellant alleges ineffective assistance of counsel based on his trial attorney's failure to object to evidence regarding appellant's driving record and his relationship with his wife.

One night on a fourth of July holiday, appellant and his wife, Kathleen Urbanski, picked up Francis Sbyzynski in front of his home. The three of them, along with another man already in appellant's car, drove off to get some beer. Appellant was the driver and Kathleen sat in the front passenger seat; Sbyzynski sat in the back seat with the other male. As appellant drove on Interstate 95, his wife began to argue with him about his erratic and high-speed driving. The argument escalated and appellant continued to drive recklessly until Kathleen opened her car door in an effort to get appellant to stop the car and let her drive. Appellant then pulled over and allowed her to take the wheel. The foursome stopped at appellant's employer's house where appellant apparently got some money for beer. After the brief visit with his employer, during which the others stayed in the car, appellant insisted on driving and pushed Kathleen over to the passenger seat. Again appellant began driving dangerously and again his wife argued with him. In response, appellant hit the brake and gas pedals off and on, causing his passengers to jerk forward

and backward in the car, all the time driving at an excessive rate of speed.

Within minutes the car crossed the oncoming lanes in the road and crashed violently into a fence and then a huge boulder beyond the fence. As a result of the impact, Kathleen Urbanski was killed.[1]

At the hospital, appellant's blood was tested by medical personnel pursuant to standard hospital procedure. Two hours later, police officer Fred Potter arrived at the hospital and observed that appellant appeared to be very intoxicated, with bloodshot eyes, a strong odor of alcohol about him and slurred speech. In addition, appellant was uncooperative with hospital staff. Officer Potter then ordered that appellant's blood be tested; the test revealed a .10% alcohol content and the presence of cocaine. Based on observations at the scene and the hospital, police executed a search warrant in order to get access to the hospital records, particularly the laboratory blood test taken by medical staff shortly after the crash. The test revealed that at approximately one hour after the crash, appellant's blood alcohol level was .215% and contained traces of cocaine.

The results of both tests were admitted at trial as was the testimony of Francis Sbyzynski who recounted the heated arguments between appellant and his wife and described appellant's behavior while driving the car. Appellant was found guilty of third degree murder, homicide by vehicle while driving under the influence, driving under the influence of alcohol or a controlled substance, aggravated assault and recklessly endangering another person. He was sentenced to four and one half to ten years in prison and ten years probation.

Relying on *Commonwealth v. Kohl*, 532 Pa. 152, 615 A.2d 308 (1992), appellant insists that the results of his blood tests should not have been admitted into evidence because the statute authorizing them recently was declared unconstitution-

1. Appellant and Sbyzynski were injured and treated at a nearby hospital.

al by our supreme court. Appellant misinterprets the holding in *Kohl.*

There are two sections to the statute which empowers law enforcement personnel to test the breath, blood and urine of persons in this Commonwealth. The law, commonly referred to as the implied consent provision, provides:

(a) General Rule.—Any person who drives, operates or is in actual physical control of the movement of a motor vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a motor vehicle:

(1) while under the influence of alcohol or a controlled substance or both; or

(2) which was involved in an accident in which the operator or passenger of any vehicle involved or a pedestrian required treatment at a medical facility or was killed.

75 Pa.C.S.A. § 1547(a).

In *Kohl,* our supreme court addressed the constitutionality of § 1547(a)(2) and held that where police administer chemical tests of breath, blood or urine only upon knowledge that an individual has been involved in an accident causing injury or death, violations of the Fourth Amendment and the Pennsylvania Constitution occur. The *Kohl* court ruled that police must have independent facts to establish probable cause to believe that the operator of the vehicle was driving under the influence.

In his brief, appellant asserts that *Kohl* nullified § 1547(a) completely. We conclude that this is an overbroad reading of the case. The Supreme Court invalidated subsection (2) only and in so doing reaffirmed the validity of subsection (1). The court, in voiding subparagraph (2), stated:

Under § 1547(a)(2), however, the officer must only have reasonable grounds to believe that the operator of the

vehicle was involved in an accident involving a fatality or in which treatment at a medical facility was required. No knowledge of sufficient facts and circumstances to warrant a belief that the operator has committed a crime is required.

A search or seizure conducted under circumstances in which there is no probable cause to warrant a belief that a crime has been committed is constitutionally impermissible. *Indeed, if the police officers had observed any signs of intoxication, the blood tests would have been authorized by 75 Pa.C.S.A. § 1547(a)(1).*

*Kohl*, 615 A.2d at 316. (emphasis supplied).

■■■ Clearly, *Kohl* invalidated only § 1547(a)(2) and left subsection (a)(1) intact. Therefore, where a police officer has reasonable grounds to believe that a person is driving under the influence of alcohol or a controlled substance, he or she may require an individual to submit to a chemical test without a warrant.[2] We turn now to the tests administered to appellant.

■■■ With respect to the second test, the one ordered by Officer Potter some three hours after the crash, the record is clear that the test was predicated upon Officer Potter's observations of appellant. Officer Potter testified:

He had a very strong odor of alcoholic beverages coming from his breath. He had bloodshot eyes. He was—words were slurred and thick-tongued. And he was giving the people operating the cat scan difficulty and they wanted him to stay still and he was squirming and the machine—

\* \* \* \* \* \*

My opinion is based on the strong odor of alcoholic beverages, the slurred speech, his obvious impairment to me by the alcohol that he would have been unsafe to operate a motor vehicle.

**2.** "Reasonable grounds" has been construed to mean probable cause; therefore, police must have probable cause to believe a suspect has been driving under the influence in order to require testing. *Commonwealth v. Cieri*, 346 Pa.Super. 77, 499 A.2d 317, 322 (1985).

The observations made by Officer Potter are sufficient to establish probable cause to believe appellant had been driving under the influence. *See Commonwealth v. Welshans*, 397 Pa.Super. 439, 580 A.2d 379, 381 (1990), *aff'd*, 529 Pa. 571, 605 A.2d 1222 (1992). We are convinced that the second blood test was authorized by § 1547(a)(1) and, therefore, was admissible.

■ With respect to the first blood test, we note that the taking of this test does not trigger constitutional concerns. The test was performed by medical personnel pursuant to standard hospital procedure; the staff was not acting as an agent of the police when the test was ordered. *See Commonwealth v. Hipp*, 380 Pa.Super. 345, 551 A.2d 1086, 1091 (1988) (prohibition against illegal search and seizure applies only to actions of government authorities). Further, the results of the test were given to police only *after* probable cause to believe that appellant was driving while intoxicated had been established. *See Commonwealth v. Haynos*, 363 Pa.Super. 1, 525 A.2d 394, 399 *alloc. denied*, 517 Pa. 604, 536 A.2d 1329 (1987) (where probable cause exists prior to inquiry into hospital records, test results admissible). Here the results of the first test were given to police in compliance with a search warrant supported by an affidavit of probable cause.[3]

We find that the *Kohl* decision is not applicable here and that the evidence of appellant's blood alcohol levels properly was admitted at trial.

■ Appellant next makes two arguments as to sufficiency of the evidence. His first argument requires little attention. Appellant asserts that there was insufficient evidence to prove that his actions were the direct cause of his wife's death. The trial judge, sitting without a jury, found appellant guilty of driving under the influence. The witnesses at trial established that appellant drove recklessly and erratically despite his wife's protestations. One hour after the crash, appellant's blood alcohol level was .215%, dangerously above the legal

3. Appellant did not challenge the propriety of the warrant at trial; however, the same probable cause that gave police authorization to order the second test supports the warrant that gave police access to the results of the first test.

limit. The evidence was more than sufficient to prove causation. *See Commonwealth v. Dixon,* 346 Pa.Super. 36, 498 A.2d 1358 (1985).

 Appellant also claims that there was insufficient evidence of malice to support a conviction for third degree murder. Malice, defined as a recklessness of consequences, a mind regardless of social duty, an unjustified disregard for the probability of death or great bodily harm or an extreme indifference to the value of human life, *see Commonwealth v. Carroll,* 412 Pa. 525, 531, 194 A.2d 911 (1963), can be established by a high blood alcohol content, the absence of weather or road conditions that would explain an accident and an awareness of potential danger. *See Commonwealth v. Taylor,* 461 Pa. 557, 337 A.2d 545, 548 (1975). Further, a finding of malice is supported where an accused drives recklessly immediately prior to the accident and ignores the request of another to stop driving. *Commonwealth v. Pigg,* 391 Pa.Super. 418, 571 A.2d 438, 442, *alloc. denied,* 525 Pa. 644, 581 A.2d 571 (1990). In his brief, appellant characterizes this set of facts as "nothing more than an automobile accident, in which a car runs off the highway." We disagree; the properly admitted trial testimony reveals a dangerously high blood alcohol level and a clear road surface combined with erratic driving and repeated refusals to give up the wheel. Appellant was or should have been aware of the danger that could result from driving so fast and so recklessly, especially after having had so much to drink. Even if he was not aware, his wife repeatedly reminded him of the danger and asked many times if she could drive the car. But appellant recklessly disregarded her pleas and the probability of a tragic result. His conduct in the car was the very type of conduct that the definition of malice describes. The evidence clearly was sufficient to establish malice.

 Appellant's final allegation of error is framed as an ineffectiveness challenge. Specifically, appellant claims that his attorney was ineffective for failing to object to questions about his marriage and testimony that he was driving without

a license. In order to establish ineffectiveness, appellant must 1) present an arguably meritorious underlying claim, 2) establish that trial counsel had no reasonable basis designed to effectuate his interest and 3) prove that prejudice inured to appellant as a result of his counsel's act or omission. *Commonwealth v. Tilley*, 528 Pa. 125, 595 A.2d 575, 587 (1991). Appellant has not sustained his burden.

At trial, appellant took the stand in his own defense and told the court that he and his wife were arguing over things other than his driving on the night of the crash. He also testified that he would not let his wife drive because she did not have a valid driver's license and that the crash was caused by his wife's act of grabbing the steering wheel and losing control of the car. On cross-examination, the prosecutor questioned appellant about whether he possessed a valid Pennsylvania driver's license on the night of the incident. When appellant testified that he had a valid license, the prosecutor offered, in rebuttal, oral testimony of an investigating officer who received from Harrisburg confirmation that appellant's license was indeed suspended on the date in question. Appellant now claims that his trial counsel should have objected to the rebuttal testimony because it was not offered in the proper manner, i.e., it was not authenticated. The evidence was presented orally and no documentation was offered.

It may be that the technical manner in which the evidence of appellant's suspended license was offered was improper. However, even if testimony about appellant's suspended license was improperly admitted, appellant has failed completely to show how he was prejudiced by the admission. The evidence of his intoxicated condition was overwhelming and we are confident that the admission of his suspended license did not influence the verdict in this matter. *Commonwealth v. Foy*, 531 Pa. 322, 612 A.2d 1349, 1352 (1992).

Next appellant argues counsel was ineffective for failing to object to questions about his marriage. After appellant testified that it was not his own but his wife's actions that caused

the crash, the prosecutor asked him whether or not the two were separated on the date of the crash. Appellant responded that they were living together but admitted that Kathleen had filed for divorce. The record reveals that appellant's trial counsel objected to this line of questioning, but was overruled by the court. Therefore, an ineffectiveness claim on this issue cannot be sustained.

Judgment of sentence affirmed.

BROSKY, J., files a concurring Opinion.

BROSKY, Judge, concurring.

I agree with the majority's opinion except for the finding that the evidence should be regarded as sufficient to prove the element of malice necessary for a conviction of third degree murder. However, as there are cases which tend to support the proposition, I must acknowledge them and concur.

I should state initially that I do not condone or think lightly of driving while under the influence. The dangers of such conduct are well documented, and this case is a testimonial to it as well. However, I do not favor the practice of "squeezing" criminal conduct to fit into definitions of crimes for which it was unlikely meant. Murder, of any degree, is among the most egregious and serious offenses found in our crimes code, and, as the name of that offense suggests, ordinarily encompasses either intent to kill or malicious design. The word "malice" generally connotes evil disposition and a desire to injure or harm, something greater than carelessness or recklessness. When one reviews the definition of malice in the dictionary this general connotation is reinforced. In Webster's New Collegiate Dictionary, 1980, malice is defined as a "desire to see another suffer that may be fixed and unreasonable ... intent to commit an unlawful act or cause harm without legal justification or excuse." The legal dictionary provides only a slightly broader definition. There you find phrases like "with an intent to inflict an injury," "the condition of mind which prompts one to take a life of another without just cause or provocation. A willful or corrupt intention of the

mind. It includes not only anger, hatred and revenge, but also every other unlawful and unjustifiable motive." Black's Law Dictionary, Fifth Edition p. 862. Although appellant's actions in driving in his state of intoxication smacks of belligerent stubbornness and a disregard for safety, I do not believe the record in the present case bears out an intent to injure, a desire to see another suffer or a revenge, anger or hatred motivation. Rather, as is usually the case in DUI related homicides, the fatal accident is more likely a function of extremely poor exercise of judgment.

This is not to say that such conduct should go unpunished, the conduct of appellant is clearly criminal under our law, and should be punished according to law. However, there are crimes delineated in the vehicle code and crimes code which more properly encompass the conduct which took place in the present case. Indeed, perhaps in response to a growing concern for DUI related fatalities and a perceived "hole" in the classification of crimes, the legislature created the offense of homicide by vehicle while driving under the influence. 75 Pa.C.S.A. § 3735, enacted December 15, 1982. That section would seem to have been designed to cover the conduct which occurred here and to create a more serious classification of homicide by vehicle than that which previously existed. In contrast, we stated in *Commonwealth v. Pigg*, 391 Pa.Super. 418, 571 A.2d 438 (1990), that "it is rare for a death caused by *vehicular incident to give rise to a conviction of third-degree murder, ...*" Yet, if the present case represents a third degree murder then it would seem that a great many if not virtually all DUI related fatalities could qualify for such treatment.

Despite the majority's attempt to make this accident appear as a more serious incident of driving under the influence, it does not figure to rise to a level of conduct designed to injure or kill the occupants of the vehicle. Indeed, since appellant remained in the vehicle it seems highly unlikely that he had a malicious intent towards his passengers unless he was also attempting to injure or kill himself. Absent this inference the cause of the fatality more probably appears to be an intoxicated individual who displays the kind of impaired judgment and

driving ability unfortunately often displayed by such intoxicated individuals.

The majority's opinion suggests that it is "recklessness of consequences, a mind regardless of social duty" for appellant to have driven in his state of intoxication. However, this argument could be made, to varying degrees, as to any individual who drives after having ingested alcohol and would seem to have been factored into the offense of homicide by vehicle while driving under the influence. In fact, it is most likely the belief that a homicide by vehicle which is caused by one's intoxication is more reprehensible than a non-DUI related homicide by vehicle which led the legislature to create the offense in the first place and provide for a greater punishment.

The other theme present in the opinion is a suggestion that the degree of one's intoxication might influence whether one has committed only homicide by vehicle while DUI or third degree murder. However, in so doing, the majority's position holds the appellant, or one in the same position as the appellant, to a standard of consciousness, conscientiousness and judgment that a sober individual would be held to. Although ideally an intoxicated individual would be able to assess his degree of intoxication and its probable effect on his driving ability, this is somewhat unreasonable given that the individual placed in this position is admittedly intoxicated. Generally speaking, the greater one's state of intoxication the greater the impairment to one's ability to exercise rational judgment. Thus, although it is probably true that the greater a person's level of intoxication the greater the threat he will pose to others, it is probably just as true that his ability to recognize this fact and act accordingly will be diminished as well. Since malice is a question of one's state of mind it does not necessarily follow that simply because the risk of a fatality increases with the degree of a driver's intoxication that the driver feels any malice at all towards those placed at risk. Instead the greater the intoxication the less likely the driver will exercise sound judgment or appreciate fully the risk he is creating. This seems directly contrary to the state of mind of malice.

It is notable that the cases which originated this theory for third degree murder occurred I believe when the present crime of homicide by vehicle while driving under the influence was not available.[1] It is entirely possible that these cases would not have surfaced had that option been available to the prosecutors or the courts. Absent that offense it is possible that a more culpable or egregious incident of driving under the influence created a desire to treat those incidents more severely. To accomplish that goal in the absence of § 3735 those incidents would have to be squeezed into a more serious classification of crime, like third degree murder.[2]

This is not to suggest that there are no incidents of homicide by vehicle while DUI that could and should be punishable with a third degree murder conviction. For instance if a drunken driver knowingly sped headlong into a group of pedestrians the gross disregard for almost certain injury or fatality would be sufficient, in my opinion, to satisfy the element of malice. The same would be true if the drunken driver engaged in highly dangerous "daredevil" driving or playing a dangerous game such as "chicken," (driving straight at another vehicle to see who would "chicken out" and veer away first), which resulted in a fatality. However, those are cases of a much higher degree of disregard for the risk of more certain injury or death than is presented here.

In contrast to the facts of this case are the examples given in *Commonwealth v. Mayberry*, 290 Pa. 195, 138 A. 686, 688 (1927), which appears to be one of the first cases discussing a murder conviction for a vehicular homicide. The court said there "[h]ad the appellant at bar dashed down Highland avenue and wantonly, recklessly and in disregard of the consequences hurled his car against another, or into a crowd

---

1. *Commonwealth v. Taylor*, 461 Pa. 557, 337 A.2d 545 (1975), appears to be one of the first cases where a murder conviction was upheld in the DUI related fatality scenario.

2. Involuntary manslaughter might be regarded as more appropriate than third degree murder. *Commonwealth v. Aurick*, 342 Pa. 282, 19 A.2d 920 (1940), allowed a conviction for involuntary manslaughter in a vehicular fatality situation which did not involve an intoxicated driver.

or over a person on sidewalk or street...." then he should be punished as if he had accomplished death by wantonly and wickedly firing a gun. While the above quote rings true, it seems to me that to find the evidence presented here sufficient for a third degree murder conviction, particularly under the rationale provided, is to negate the need for the crime of homicide by motor vehicle while driving under the influence altogether. Any incident which would satisfy those elements would appear to also satisfy those required for third degree murder, or involuntary manslaughter. Since it is contrary to rules of statutory construction to presume that the legislature is creating a wholly superfluous crime, I believe that third degree murder in a vehicular context requires a showing of malice more similar to the definitions quoted above. Malice, as the term implies, should be defined as an actual desire to injure or kill or cause suffering to another or conduct that suggests a disregard for almost certain death or injury such that it is tantamount to the same. I do not think the evidence here established such malice. However, I cannot argue with the fact that certain cases, most notably *Commonwealth v. Taylor,* 461 Pa. 557, 337 A.2d 545 (1975) and *Commonwealth v. Pigg,* 391 Pa.Super. 418, 571 A.2d 438 (1990), would appear to support the majority's holding. Consequently, I must concur.