## Commonwealth v. Galan

*Eileen Tucker, assistant district attorney,* for the Commonwealth.

*Joseph P. Green,* for defendant.

SMITH, *J.,* January 30, 1995—

## FINDINGS OF FACT

(1) On January 15, 1994, at approximately 3:40 a.m., officers from the Cumru Township Police Department were dispatched to the scene of a motor vehicle accident on New Holland Road (State Route 625), Berks County, Pennsylvania.

(2) Officer David Hain of the Cumru Township Police Department was one of the first officers at the scene. Upon his arrival, Officer Hain observed a 1989 Plymouth Sundance resting against a bridge abutment.

(3) Officer Hain further observed a person seated in the driver's seat. The driver was later identified as defendant, Debra Galan. According to the officer, defendant appeared "confused and semi-conscious." The officer also observed another occupant in the vehicle lying between the front seats with his head against the floor in the rear seat area. The passenger was later identified as Joseph Galan, defendant's husband.

(4) At approximately 4:30 a.m., after emergency rescue personnel had arrived and extricated both occupants from the car, Joseph Galan was pronounced dead at the scene by Berks County Deputy Coroner, John N. Lampros.[1]

(5) Based on his observations, Officer Keith Fritz, also of the Cumru Police Department, determined from various marks at the scene as well as the position of the vehicle that defendant's car had been travelling

---

1. Both attorneys in this matter stipulated at the suppression hearing that for purposes of this hearing defense counsel will admit that Joseph Galan died as a result of trauma sustained during the accident.

southbound on Route 625 when it crossed the center line into the northbound lane eventually leaving the roadway and striking a bridge abutment on the berm of the road. (N.T. 6/2/94 at 11-13.)

(6) Before defendant was transported to the hospital, Officer Fritz detected the moderate odor of alcohol on defendant's breath. Based on his observations, Officer Fritz followed defendant to the hospital in order to secure a blood sample.

(7) A blood sample was taken at 5:30 a.m. from defendant at Lehigh Valley Hospital. Officer Fritz took custody of the sample and transported it to St. Joseph Hospital for analysis.

(8) Later analysis of the sample indicated its blood alcohol content to be .172 percent.

(9) On February 27, 1994, Officer Timothy Woll interviewed defendant at her residence. Officer Woll admitted at the suppression hearing that prior to conducting the interview he was aware that defendant had retained the services of Lawrence M. DelVecchio, Esquire, in connection with the accident. Officer Woll did not contact Mr. DelVecchio prior to interviewing defendant.

(10) Before asking any questions of defendant, Officer Woll advised her of the following: that Officer Woll was investigating the one-vehicle accident that occurred on January 15, 1994, involving defendant and her husband; that defendant was not under arrest or in custody in any way; that defendant did not have to answer the officer's questions and that she could stop answering questions at any time and ask the officer to leave.

(11) Officer Woll also asked defendant if she wished to have her attorney present to which defendant responded "no."

(12) During the course of the interview, defendant admitted that she had consumed approximately five to six drinks during the evening of the accident. (See N.T. 6/2/94 at 18.) Defendant further testified that she and her husband had visited one drinking establishment at about 11:30 p.m. *Id.* Defendant then said that she and her husband left the first establishment at 1:30 a.m., and went to a second establishment. *Id.* Defendant stated that she and her husband left the second establishment at approximately 3 a.m., one hour before Officer Fritz arrived at the scene of the accident. (N.T. at 19.)

(13) Defendant was subsequently arrested and charged with one count of homicide by vehicle while under the influence of alcohol, one count of homicide by vehicle, three counts of driving under the influence, one count of involuntary manslaughter, one count of recklessly endangering another person, and one count of driving on right side of roadway.[2]

## SUPPRESSION ISSUES

Should evidence surrounding defendant's arrest for driving under the influence of alcohol, including the officer's observations, defendant's statements made to Officer Woll, and the blood alcohol results, be suppressed on grounds that: (1) The police violated both defendant's federal and state constitutional rights when they questioned her at her residence without her counsel present; and (2) the police lacked probable cause to believe that defendant was operating a vehicle while incapable of safe driving, and therefore, had no jus-

---

2. 75 Pa.C.S. §3735(a); 75 Pa.C.S. §3732; 75 Pa.C.S. §§3731(a)(1), 3731(a)(4), 3731(a)(5)(i)(ii); 18 Pa.C.S. §2504; 18 Pa.C.S. §2705; and 75 Pa.C.S. §3301(a), respectively.

tification to seize a blood sample. Finally, defendant argues that the Commonwealth has failed to establish a prima facie case on both DUI. counts and for the homicide by vehicle while driving under the influence charge.

## CONCLUSIONS OF LAW

### Motions To Suppress Interview

(1) When ruling on suppression motions, the suppression court is required to make findings of fact and conclusions of law as to whether evidence was obtained in violation of defendant's constitutional rights. *Commonwealth v. Haynes,* 395 Pa. Super. 322, 577 A.2d 564 (1990), *appeal denied,* 527 Pa. 598, 589 A.2d 689 (1991). Moreover, the burden is on the Commonwealth to establish by a preponderance of evidence that the challenged evidence is admissible. *Commonwealth v. DeWitt,* 530 Pa. 299, 608 A.2d 1030 (1992). Finally, the suppression court is entitled to believe all, part, or none of a witness' testimony. *Commonwealth v. Williams,* 411 Pa. Super. 586, 602 A.2d 350 (1992).

(2) As to the first suppression issue, defendant makes several arguments. First, defendant alleges that there was prosecutorial misconduct on the part of the Berks County District Attorney's Office, and that this alleged misconduct warrants the exclusion of evidence. Second, counsel argues that defendant's right to counsel under the Pennsylvania Constitution was violated. Finally, counsel argues that defendant's due process rights under the Pennsylvania Constitution were violated and this justifies exclusion of evidence.

(3) Defendant argues that since Officer Woll had spoken with an assistant district attorney regarding in-

terviewing defendant,[3] Officer Woll was acting as the district attorney's agent, and as such communication with defendant was in violation of the Code of Professional Responsibility.[4]

(4) This court can find no evidence in the record to establish that an agency relationship existed between the district attorney's office and Officer Woll.

(5) Agency is created where there exists a "manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal is to be in control of the undertaking." *Volunteer Fire Co. v. Hilltop Oil Co.,* 412 Pa. Super. 140, 146, 602 A.2d 1348, 1351 (1992). Moreover, agency "cannot be assumed from the mere fact that one does an act for another." *Id.* at 146, 602 A.2d at 1351. (citations omitted)

(6) Here there is nothing in the record to suggest that Officer Woll's actions were controlled by the district attorney's office. Officer Woll had complete autonomy in conducting his investigation. Furthermore, communication between district attorneys and police officers is to be expected. Due to the very nature of their respective duties, some type of interplay between the two groups is required. However, this communication does not establish the basis for an agency relationship. To hold that any conversation between the two forms

---

3. Officer Woll freely admitted at the suppression hearing that he had spoken to Assistant District Attorney Robert Kirwan regarding whether he could interview defendant at her house. Officer Woll testified that ADA Kirwan suggested that he could interview defendant at her residence.

4. Specifically defendant cites Rule 4.2 of the Code which in essence prohibits a lawyer from communicating with another party he or she knows to be represented by another attorney unless the lawyer has consent from the other lawyer to do so.

the basis for an agency relationship would be unreasonable. Therefore, defendant's argument on this point must fail.

(7) Next, defendant argues that defendant's right to counsel under the Pennsylvania Constitution was violated when the police interviewed her in the absence of her attorney.

(8) "In Pennsylvania, the right to counsel attaches *at the time of arrest,* and exists for identification confrontations after arrest, except for prompt, on-the-scene confrontations." *Commonwealth v. Melson,* 383 Pa. Super. 139, 148, 556 A.2d 836, 840 (1989). (emphasis added) Moreover, the right to counsel also applies to any "custodial encounter" between a defendant and police. See *Commonwealth v. Santiago,* 405 Pa. Super. 56, 591 A.2d 1095 (1991). *(en banc)*

(9) It is uncontradicted here that defendant was not under arrest when Officer Woll interviewed her. Moreover, the record demonstrates that Officer Woll's interview constituted a mere encounter rather than a custodial interrogation.

(10) In the landmark case of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the court stated: "By custodial interrogation we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Moreover, "[p]olice detentions only become custodial when, under the totality of the circumstances, the conditions and/or duration of the detention become so coercive as to constitute the functional equivalent of a formal arrest." *Cullenen v. Commonwealth,* 138 Pa. Commw. 508, 518, 588 A.2d 988, 993 (1991).

(11) There is nothing in the record here to suggest that defendant was under the "functional equivalent

of arrest" when Officer Woll interviewed defendant at her residence. Officer Woll, prior to interviewing defendant, told defendant that she was not in custody or under arrest. Officer Woll also told defendant that she was free not to answer his questions and could ask him to leave at any time. Further, Officer Woll testified that he told defendant that she could have her attorney present if she wished. Officer Woll testified that he made no threats or promises to defendant while interviewing her. He did not restrict defendant's freedom of movement or restrain her in any way. Officer Woll also testified that the entire interview lasted only about one-half of an hour.

(12) These facts when viewed in their entirety lead this court to conclude that defendant was not in custody when she was interviewed by Officer Woll. Therefore, her constitutional rights were not violated by not having her attorney present at the interview.

(13) Defendant finally argues that the fruits of the interview must be suppressed pursuant to the due process clause of the Pennsylvania Constitution. Defendant argues that if this court should find that Officer Woll was acting as an agent for the district attorney's office, the fruits of the interview must be suppressed as they were gained in violation of ethical standards. Since this court has found that Officer Woll was *not* acting as an agent for the Commonwealth, defendant's argument must in turn fail.

### Motion To Suppress Results of Blood Test

(14) Defendant's next motion to suppress surrounds the results of defendant's blood alcohol test. Defendant

argues that the police officers lacked the requisite probable cause to warrant the seizure of defendant's blood.[5]

(15) The standard for when police officers may require a defendant to submit to a chemical test is well established:

"Where a police officer has reasonable grounds to believe that a person is driving under the influence of alcohol or a controlled substance, he or she may require an individual to submit to a chemical test without a warrant." *Commonwealth v. Urbanski,* 426 Pa. Super. 505, 511, 627 A.2d 789, 792 (1993). Furthermore, the court in *Urbanski,* construed "reasonable grounds" to mean probable cause. *Id.* at 511 n.2, 627 A.2d at 792 n.2.

(16) It has further been held that police have probable cause to believe that a defendant has been driving under the influence, thereby justifying a blood test, where a defendant, who smelled of alcohol, was involved in a single vehicle accident when the weather was clear and the road conditions were good. *Commonwealth v. Welshans,* 397 Pa. Super. 439, 580 A.2d 379 (1990).

(17) Similarly here, Officer Fritz testified at both the suppression hearing and at the preliminary hearing

---

5. The implied consent statute is helpful in evaluating defendant's claim. Section 1547(a) provides in relevant part, that:

"Any person who drives, operates or is in actual physical control of the movement of a motor vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating, or in actual physical control of the movement of a motor vehicle:

"(1) while under the influence of alcohol or a controlled substance or both ..." 75 Pa.C.S. §1547(a).

that he "smelled the odor of an intoxicating beverage" from both within the car and from defendant. (N.T. 6/2/94 at 9.) Moreover, on the night of the accident the road was dry and completely clear of any snow or ice.[6]

(18) In accordance with the court's decision in *Welshans,* it appears that sufficient facts were available to Officer Fritz to provide him with probable cause to believe that defendant had been driving while under the influence. Therefore, the police were justified in having a blood test performed upon defendant, and defendant's argument to the contrary must fail.

### Habeas Corpus Motions

(19) Defendant also alleges that the Commonwealth has failed to produce a prima facie case on the charges of driving under the influence, 75 Pa.C.S. §3731(a)(1)(5), and homicide by vehicle, 75 Pa.C.S. §3735.

(20) At a preliminary hearing "the standard of proof for the Commonwealth is merely to establish a prima facie case *(i.e.,* that a crime has been committed and that the accused is probably the one who committed it), and there is no requirement that the Commonwealth establish the accused's guilt beyond a reasonable doubt at this stage." *Commonwealth v. Rogers,* 416 Pa. Super. 59, 63, 610 A.2d 970, 972 (1992). "In order to meet its burden at the preliminary hearing, *the Commonwealth is required to present evidence with regard to each of the material elements of the charge and to establish sufficient probable cause to warrant the belief that the accused committed the offense." Commonwealth v.*

---

6. There was however snow packed on the side of the road and where defendant's car eventually came to rest. However, as noted above, the highway portion of the road was dry and clear.

*McBride,* 528 Pa. 153, 158, 595 A.2d 589, 591 (1991). (emphasis added) Further, the court may only consider legally competent evidence in assessing whether the Commonwealth has met its burden of establishing a prima facie case. See *Commonwealth ex rel. Buchanan v. Verbonitz,* 525 Pa. 413, 581 A.2d 172 (1990).

(21) In order to establish a prima facie case for driving under the influence, 75 Pa.C.S. §3731(a)(1), the Commonwealth must have proved that: "(1) [defendant] was driving, operating or in actual physical control of the automobile, and (2) while under the influence of alcohol to a degree which rendered him incapable of safe driving." *Commonwealth v. Price,* 416 Pa. Super. 23, 26-27, 610 A.2d 488, 489 (1992).

(22) In reviewing the record, this court finds that the Commonwealth has established a prima facie case to support the charge of driving under the influence.

(23) As to the "driving, operating or in actual physical control" element of the offense, the court has defendant's own admission that she was the driver of the car at the time of the accident. Therefore this element is not at issue.

(24) As to the second element, at the preliminary hearing Officer Fritz testified that he determined from various marks at the scene as well as the location of the vehicle that defendant's car had been travelling southbound when it crossed the center line into the northbound lane eventually striking a bridge abutment on the berm of the road. (N.T. 6/2/94 at 11-13.)

(25) Furthermore, according to the testimony of Officer Fritz at the preliminary hearing, he detected an odor of alcohol on defendant's breath at the accident scene. (N.T. at 9.) Moreover, defendant admitted to Officer Woll that she had consumed about "five to six 'rum and cokes.' " See Probable Cause for Warrant

of Arrest, pg. 5. Finally, the results of the blood alcohol test indicated that defendant's blood alcohol level was .172 percent.

(26) All these factors taken in the aggregate lead this court to conclude that the Commonwealth has established a prima facie case that defendant was incapable of safe driving, and therefore the charge of driving under the influence, 75 Pa.C.S. §3731(a)(1) shall be bound over for trial.

(27) As to the charge of driving under the influence, 75 Pa.C.S. §3731(a)(5), the only issue is whether the Commonwealth has presented sufficient proof to establish that the blood test was taken within three hours of driving. Defendant contends that the Commonwealth has offered no evidence to establish when the vehicle was last driven.

(28) The blood test in this case was performed at 5:35 a.m. Therefore, defendant must have driven her car sometime after 2:35 a.m. in order for section 3731(a)(5) to apply.

(29) At both the preliminary hearing and at the suppression hearing Officer Woll testified that defendant admitted to him that she and her husband left the second establishment at approximately 3 a.m. This court finds this testimony wholly sufficient to support a charge under section 3731(a)(5), and therefore denies defendant's motion.

(30) Defendant's final challenge is to the charge of homicide by vehicle while driving under the influence, 75 Pa.C.S. §3735.[7] In order to sustain the charge this

_____

7. The statute at issue reads in pertinent part:

*"Section 3735 homicide by vehicle while driving under the influence*

*"(a) Offense defined.*—Any person who unintentionally *causes* the death of another person *as the direct result* of a violation of

court must find that the Commonwealth has presented sufficient evidence to establish that Mr. Galan's death was the direct result of defendant's violation of section 3731.[8]

(31) In *Commonwealth v. Lenhart,* 520 Pa. 189, 553 A.2d 909 (1989), the court was faced with a case similar to the one at bar. In that case the defendant was convicted by the trial court for driving under the influence and homicide by vehicle while driving under the influence. The charges arose from a fatal head-on collision occurring at 2 a.m. The defendant was taken to a hospital where a blood sample was taken; analysis disclosed a blood alcohol content of 0.21 percent. The Pennsylvania Supreme Court eventually vacated defendant's judgment of sentence under section 3735 for lack of proof to support such a conviction. In reaching its decision the court stated:

"The common forms of proof such as eyewitness testimony, skid marks, or accident reconstruction expert testimony, were entirely absent from this case. The trial judge properly concluded that he would have to *speculate* to find that appellant's vehicle crossed the center line prior to the collision. The same reasoning applies with equal force to the offense of homicide by vehicle while DUI under section 3735. It is not enough to

section 3731 (relating to driving under the influence of alcohol or controlled substance) and who is convicted of violating section 3731 is guilty of a felony of the third degree *when the violation is the cause of death* and the sentencing court shall order the person to serve a minimum of imprisonment of not less than three years." 75 Pa.C.S. §3735(a). (emphasis added)

8. As it was stipulated that Mr. Galan died of injuries suffered in the accident, the causation in question is limited to whether defendant's drunk driving caused the accident. See *Commonwealth v. Lenhart,* 520 Pa. 189, 194, 553 A.2d 909, 911 (1989).

conclude that appellant's intoxication was *the most likely cause* of the accident and death; causation must be established *beyond a reasonable doubt* in order to sustain the conviction. It is, of course, a reasonable possibility that an absolutely sober motorist might doze off at 2 a.m. lose control of his car, and cause an accident. The scanty evidence of record in this case simply fails to prove that appellant caused the accident." *Id.* at 194, 533 A.2d at 911-12. (emphasis in original)

(32) The case at bar is distinguishable from *Lenhart* in a number of respects. Unlike *Lenhart*, the applicable standard of proof for the Commonwealth at this stage of the proceedings is not "beyond a reasonable doubt." Rather, as previously discussed, the Commonwealth must only "present evidence with regard to each of the material elements of the charge and to establish sufficient probable cause to warrant the belief that the accused committed the offense." *Commonwealth v. McBride, supra* at 158, 595 A.2d at 591. Furthermore, in this case the Commonwealth has physical evidence in the form of skid marks, positioning of the car, and testimony of defendant to support a charge that defendant was incapable of safe driving under 75 Pa.C.S. §3731(a)(1). This same evidence also sustains the charge of homicide by vehicle while driving under the influence.

(33) Therefore, as the Commonwealth has presented sufficient evidence as to the causation element *(i.e., that Mr. Galan's death was a direct result of defendant's violation of section 3731)* for the charge of homicide by vehicle while driving under the influence, this court has no choice but to deny defendant's motion.

For the foregoing reasons, this court now enters the following order:

## ORDER

And now, to wit, January 30, 1995, after a hearing held and upon further consideration of defendant's omnibus pretrial motion to suppress evidence, it is hereby ordered that said motion is hereby denied. This court also finds that the Commonwealth has established a prima facie case and defendant's habeas corpus motion is therefore denied.

