J-A06043-17

2017 PA Super 384

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| KHUSEN A. AKHMEDOV | |
| Appellant | No. 3443 EDA 2015 |

Appeal from the Judgment of Sentence November 2, 2015
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0013582-2013

BEFORE:  PANELLA, J., SHOGAN, J., and RANSOM, J.

OPINION BY RANSOM, J.:                    **FILED DECEMBER 08, 2017**

Appellant, Khusen A. Akhmedov, appeals from the judgment of sentence of seventeen to thirty-four years of incarceration, imposed November 2, 2015, following a waiver trial resulting in his conviction for four counts each of murder in the third degree, involuntary manslaughter, homicide by vehicle, and recklessly endangering another person.[1]  We reverse in part and remand for resentencing.

We adopt the following statement of facts from the trial court opinion, which in turn is supported by the record.  *See* Trial Court Opinion, 6/28/16, at 2-10.  On July 16, 2013, at approximately 10:30 p.m., Appellant drove southbound on Roosevelt Boulevard ("the Boulevard") in Philadelphia,

_____

[1] 18 Pa.C.S. § 2502(c); 18 Pa.C.S. § 2504; 75 Pa.C.S. § 3732; 18 Pa.C.S. § 2705.

Pennsylvania, which has a posted speed limit of 40 m.p.h. Appellant and the driver of another car entered into a race, with each car weaving through traffic at speeds in excess of 70 m.p.h. At times, the cars were so close to each other that they appeared "hitched" together. At three successive traffic lights the cars stopped, revved their engines, and raced to the next light. Finally, both drivers approached the intersection of the Boulevard and 2nd Street. The intersection does not have a crosswalk or signs warning drivers that pedestrians might be present, and is not intended for foot traffic. Further, the intersection is situated in such a way that it is difficult to see on approach, due to a hill.

At the intersection, Samara Banks and her three, minor children were crossing the Boulevard. Appellant attempted to evade them but was too late to change his course. Instead, he struck Ms. Banks and the children. Appellant remained at the crash site until medical personnel and police arrived. Ms. Banks and one of the children were pronounced dead at the scene; the remaining two children passed away at hospitals the next day. Multiple eyewitnesses observed the race and subsequent crash. After the accident, a police accident reconstructionist examined the scene and determined the path of the collision. The officer concluded that at the time of impact, Appellant was traveling at a minimum speed of 79 m.p.h.

Prior to trial, the Commonwealth litigated a motion *in limine* seeking to admit evidence of prior bad acts, namely, 1) an incident in Lancaster County in which Appellant almost ran another driver off the road; 2) a Facebook

posting in which he "reveled" in the excitement of drag racing; and 3) Appellant's driving record, including numerous vehicular offenses. The court granted the motion and allowed admission of the evidence.[2]

Following a bench trial in July 2015, the court convicted Appellant of the above counts. Appellant was sentenced to four to eight years of incarceration on four counts of third degree murder and one to two years for one count of REAP, all to run consecutively, for a total of seventeen to thirty four years of incarceration. The court merged the convictions for involuntary manslaughter and imposed no further sentence for charges of homicide by vehicle. Appellant filed a post-sentence motion, which was denied.

Appellant timely appealed and filed a court-ordered statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The trial court issued a responsive opinion.

On appeal, Appellant raises the following issues for our review:

> 1. Whether the evidence was insufficient as a matter of law to sustain the convictions for third degree murder as the evidence failed to establish malice on the part of [Appellant]?

_____

[2] It is unclear from the record when the court granted this motion. Appellant's brief does not cite to the portion of the record containing this ruling, nor does the docket reflect an order entered. Appellant's brief indicates that oral argument was held, but does not indicate the day of said argument. **See** Appellant's Brief at 33. No notes of testimony of the oral argument appear in the certified record, and the trial testimony references rulings already made.

2. Whether the trial court abused its discretion in denying [Appellant's] motion for a new trial on the basis of the weight of the evidence?

3. Whether the trial court abused its discretion when it granted the Commonwealth's motion *in limine* to admit evidence of prior bad acts?

4. Whether the trial court abused its discretion in denying [Appellant's] request for a particular jury charge on the issue of malice in the context of motor vehicle fatalities?

5. Whether the trial court abused its discretion by ignoring mitigating factors and ordering an excessive sentence?

Appellant's Brief at 8.

First, Appellant argues that the evidence is insufficient to sustain a conviction for third degree murder, as the Commonwealth did not establish that he had the requisite *mens rea*.[3] **See** Appellant's Brief at 14. Appellant claims that the evidence was insufficient to show he acted with malice, and specifically, that he did not operate his vehicle under circumstances which almost assured that injury or death would ensue. **Id.**

We review a challenge to the sufficiency of the evidence as follows.

In determining whether there was sufficient evidentiary support for a jury's finding [], the reviewing court inquires whether the proofs, considered in the light most favorable to the Commonwealth as a verdict winner, are sufficient to enable a reasonable jury to find every element of the crime beyond a reasonable doubt. The court bears in mind that: the

---

[3] Appellant was also convicted of four counts each of involuntary manslaughter, homicide by vehicle, and recklessly endangering another person. He does not challenge the sufficiency of the evidence with respect to those convictions.

- 4 -

Commonwealth may sustain its burden by means of wholly circumstantial evidence; the entire trial record should be evaluated and all evidence received considered, whether or not the trial court's rulings thereon were correct; and the trier of fact, while passing upon the credibility of witnesses and the weight of the evidence, is free to believe all, part, or none of the evidence.

***Commonwealth v. Diggs***, 949 A.2d 873, 877 (Pa. 2008) (citations omitted).

Third degree murder occurs when a person commits a killing which is neither intentional nor committed during the perpetration of a felony, but contains the requisite malice. ***See*** 18 Pa.C.S. § 2502(c); ***see also Commonwealth v. Kling***, 731 A.2d 145, 147 (Pa. Super. 1999). Malice

exists where there is a wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured. Where malice is based on a reckless disregard of consequences, it is not sufficient to show mere recklessness; rather, it must be shown the defendant consciously disregarded an unjustified and extremely high risk that his actions might cause death or serious bodily injury. A defendant must display a conscious disregard for almost certain death or injury such that it is tantamount to an actual desire to injure or kill; at the very least, the conduct must be such that one could reasonably anticipate death or serious bodily injury would likely and logically result.

***Kling***, 731 A.2d at 147-48 (internal citations and quotations omitted).

This Court has concluded that to show malice in relation to a car crash, the evidence must show "sustained, purposeful recklessness necessary to prove a knowing and conscious disregard that death or serious bodily injury was reasonably certain to occur." ***Id.*** at 150. Malice has been found to exist where an accident caused by a reckless motorist follows pleas from

others to stop, or where a near miss immediately precedes the crash. *See Commonwealth v. Miller*, 955 A.2d 419, 423 (Pa. Super. 2008); *see also Kling*, 731 A.2d at 150. Further, we have found that the conduct is more egregious if a motorist does not apply his brakes or attempt to slow down before a collision than if he attempts to stop. *Miller*, 955 A.2d at 423. Essentially, a driver must have adequate time to "calculate and reflect" upon the consequences of the reckless conduct in order to render the continuing choice malicious. *Kling*, 731 A.2d at 150.

Case law provides examples of motor vehicle crashes in which the defendant's actions showed the sustained and purposeful recklessness necessary to prove a knowing and conscious disregard that death or serious bodily injury was reasonably certain to occur. For instance, in *Commonwealth v. Urbanski*, an intoxicated driver, despite his wife's repeated pleas to slow down, caused a deadly collision. *See Commonwealth v. Urbanski*, 627 A.2d 789, 791-92 (Pa. Super. 1993). In *Commonwealth v. Pigg*, the intoxicated driver of a tractor-trailer drove several vehicles off the road and ignored another driver's request to stop driving, prior to crashing into another car on a narrow road and killing two people. *Commonwealth v. Pigg*, 571 A.2d 438, 439-442 (Pa. Super. 1990). In *Kling*, the defendant raced another vehicle down a curving mountain road, narrowly avoiding a collision before crossing the line in a blind curve and causing the fatal collision. *See Kling*, 731 A.2d at 146-48.

In ***Commonwealth v. Scales***, a motorist drove in daylight at excessive speeds in a crowded residential neighborhood where children were playing in the streets and sidewalks. ***See Commonwealth v. Scales***, 648 A.2d 1205, 1207-09 (Pa. Super. 1994). Defendant ignored a stop sign and almost collided with another vehicle; a bystander pleaded with him to slow down, but he did not. ***Id.*** Instead, without breaking, he sideswiped another car, jumped the curb, and pushed a large planter onto two children, crushing one of them to death. ***Id.*** In ***Commonwealth v. Dunphy***, an intoxicated driver struck the victim at a high rate of speed and, although he applied his breaks, he never came to a complete stop and fled the scene of the accident. ***See Commonwealth v. Dunphy***, 20 A.3d 1215, 1217-18 (Pa. Super. 2011). The defendant later admitted that he had seen pedestrians in the street but accelerated anyway to make the changing light. ***Id.***

Finally, in ***Commonwealth v. Packer***, the defendant inhaled aerosol duster prior and during driving, and in a zombie-like state, drove into oncoming traffic without swerving, slowing, or attempting to avoid the cars in question. ***See Commonwealth v. Packer***, 146 A.3d 1281, 1283-84 (Pa. Super. 2016). The defendant narrowly missed one vehicle before slamming head-on into another car. ***Id.*** This Court found evidence of malice in the defendant's awareness that she was driving dangerously while intoxicated: the defendant asked her passenger whether he trusted her, and he responded, "Am I going to die tonight?" ***Id.*** at 1286.

Commonalities may be observed among these cases. In each case, "near misses" occurred almost immediately preceding the crash. **See Pigg**, 571 A.2d at 439-442; **Kling**, 731 A.2d at 146-48; **Scales**, 648 A.2d at 1207-09; **Packer**, 146 A.3d at 1283-84. In many cases, a bystander or passenger warned the defendant to stop or to slow down, and the defendant ignored that warning. **Urbanski**, 627 A.2d at 791-92; **Scales**, 648 A.2d at 1207-09; **Packer**, 146 A.3d at 1283-84. Further, the defendant clearly saw the dangers, either in the form of a curving mountain road, children playing on the sidewalks and street, pedestrians in the street, or oncoming traffic. **See Kling**, 731 A.2d at 146-48; **Scales**, 648 A.2d at 1207-09; 20 A.3d at 1217-18; **Packer**, 146 A.3d at 1283-84; **Dunphy**, 20 A.3d at 1217-18. In almost all of the cases, the defendant was intoxicated. **See Packer**, 146 A.3d at 1283-84; **Pigg**, 571 A.2d at 439-442; **Urbanski**, 627 A.2d at 791-92; **Dunphy**, 20 A.3d at 1217-18.

Here, the evidence did not establish that Appellant had the requisite sustained and purposeful recklessness necessary to establish the *mens rea* necessary to sustain a conviction for third degree murder. The evidence showed that Appellant acted recklessly in driving at excessive rates of speed on Roosevelt Boulevard. The recklessness necessary to prove involuntary manslaughter, and the sustained recklessness required in a case such as this, are not the same. **See Kling**, 731 A.2d at 150 (noting that there is no distinction between the malice essential to *mens rea* for third degree murder and the malice necessary for aggravated assault); **see also**

*Commonwealth v. Comer*, 716 A.2d 593, 596-97 (Pa. 1998) (noting that a lesser degree of recklessness is required for involuntary manslaughter than for aggravated assault since assault requires recklessness "under circumstances manifesting extreme indifference to the value of human life.").

Here, the evidence did not show a near miss collision immediately preceding the crash, nor any warning provided by a bystander or passenger that Appellant heard and ignored. The intersection where the accident occurred was at the crest of a hill, rendering it difficult to see. The accident occurred at 10:30 p.m., and the victims were wearing dark clothing. Further, there were no pedestrian crosswalks in the area, as that intersection is not intended for pedestrian traffic. Appellant told police that he did not see the victims at first and attempted to swerve to avoid them but could not. Appellant remained at the scene and attempted to render aid. Appellant was not intoxicated at the time of the crash.

As noted above, the Commonwealth did introduce evidence of prior bad acts in an attempt to illustrate Appellant's "near miss" to establish malice. Appellant had previously driven recklessly and had been spoken to by police regarding a "road rage" incident in Lancaster County. However, that incident took place a week prior to the accident and was not the "immediate" preceding miss found in many of the cases discussed *supra*. *See Kling*, 731 A.2d at 147-48, 150. That incident did not establish that Appellant was aware that his driving on that night, in that manner, would

almost certainly cause death or serious bodily harm. *See Kling*, 731 A.2d at 147-48, 150.

Accordingly, although Appellant's actions certainly gave rise to a finding of reckless conduct, and the results were tragic, the evidence does not support a finding of malice and the "sustained, purposeful recklessness" necessary to prove "a knowing and conscious disregard that death or serious bodily injury was reasonably certain to occur." *Kling*, 731 A.2d at 147-48, 150. Thus, as the Commonwealth did not establish every element of the crime beyond a reasonable doubt, we vacate Appellant's convictions for third degree murder. *Diggs*, 949 A.2d at 877.

Next, Appellant claims that the trial court abused its discretion in denying Appellant's motion for a new trial on the basis of the weight of the evidence. *See* Appellant's Brief at 29. Appellant contends that several factual findings by the court are not supported by the record, including that 1) the accident occurred in a residential area; 2) the court dismissed flaws in the accident investigation officer's calculations; and 3) the court misapplied the doctrine of sustained recklessness. *See* Appellant's Brief at 30-33.

The law regarding weight of the evidence claims is well-settled.

A claim alleging the verdict was against the weight of the evidence is addressed to the discretion of the trial court. Accordingly, an appellate court reviews the exercise of the trial court's discretion; it does not answer for itself whether the verdict was against the weight of the evidence. It is well settled that the jury is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and a new trial based on a weight of the evidence claim is only warranted where

- 10 -

the jury's verdict is so contrary to the evidence that it shocks one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion.

*Commonwealth v. Houser*, 18 A.3d 1128, 1135-36 (Pa. 2011) (citations and internal quotation marks omitted).

First, Appellant argues the court erred in making a factual finding that the accident occurred in a "residential area," as evidence was introduced to show that Roosevelt Boulevard is actually a highway on which motorists speed excessively, and which pedestrians are not supposed to cross. *See* Appellant's Brief at 30. He avers that the character and nature of the road speak directly to Appellant's lack of malice. *Id.* at 31. Based upon our disposition of Appellant's first issue, we need not reach the merits of this argument.

Second, Appellant argues that the court erred in dismissing as inconsequential alleged flaws in the accident investigation officer's calculations. *See* Appellant's Brief at 31. Appellant contends that the officer's calculations were based on an erroneous belief that the accident happened outside of the view of a video camera and that there was a possibility that another motor vehicle struck or moved the victim's body. *Id.* at 31-32. Appellant does not explain how this was an abuse of the court's discretion or how the verdict was so contrary to the evidence that a new trial would be warranted. *Houser*, 18 A.3d at 1135-36. The accident investigation officer testified 1) that a scuff mark established the stroller's

- 11 -

location at the point of impact, and 2) the location of Ms. Banks' body rendered it unlikely that another car hit or moved the body. Further, even discounting the officer's calculation of Appellant's speed, four eye witnesses testified that they saw Appellant racing or observed the crash. Accordingly, it was not an abuse of discretion for the court to deny Appellant's motion where the verdicts, other than the conviction previously vacated, did not shock the conscience. *See Houser*, 18 A.3d at 1135-36.

Third, Appellant argues that the court misapplied the doctrine of sustained recklessness when interpreting the timeline of the accident. *See* Appellant's Brief at 32. However, based upon our disposition of Appellant's first issue, we need not reach the merits of this argument.

Next, Appellant claims that the trial court abused its discretion in admitting prior bad acts evidence, namely, 1) Appellant's driving record; and 2) a video from his Facebook account depicting a silver Audi drag racing with another car.[4] *See* Appellant's Brief at 33. Appellant contends that this evidence was propensity evidence and could not be admitted to show intent, because the *mens rea* for reckless driving does not equate with malice. *Id.*

---

[4] On appeal, Appellant also claims that the court improperly admitted testimony from a woman who had been involved in a road incident with Appellant several days earlier. However, Appellant did not preserve this issue in his Pa.R.A.P. 1925(b) statement. Accordingly, the argument is waived. *See Commonwealth v. Castillo*, 888 A.2d 775, 780 (Pa. 2005) ("Any issues not raised in a [Rule] 1925(b) statement will be deemed waived.").

at 36. Further, Appellant argues the evidence was cumulative and speculative. *Id.* at 36-41.

Appellant's prior vehicular violations included two convictions for reckless driving, one conviction for careless driving, and six speeding citations. *See* N.T., 7/10/15, at 3-7. The video, posted by Appellant to his Facebook account in April 2013, two months before the accident, depicted two cars, one of which identical to Appellant's BMW, racing down a deserted portion of Sandmeyer Lane in Philadelphia; however, Appellant was not pictured in the video. *See* N.T., 7/9/15, at 3-4, 90. A comment posted by Appellant indicates that the cars had reached 110 m.p.h. *See* N.T., 7/9/15, at 3-4, 90. The trial court admitted evidence of the driving record to show "intent to engage in reckless conduct," and the Facebook video to "impute[] to [Appellant] a knowledge of the nature of the neighborhood" and to "confirm[] [Appellant's] interest in drag racing." *See* TCO at 21-22.

We first note that, although this evidence was improperly admitted to illustrate the court's erroneous theory of sustained recklessness, we will nevertheless address its admissibility under the prongs of Pa.R.E. 404. We examine a trial court's decision concerning the admissibility of evidence for an abuse of discretion. *Commonwealth v. Dengler*, 890 A.2d 372, 379 (Pa. 2005). Regarding the admissibility of prior bad acts,

> [g]enerally, evidence of prior bad acts or unrelated criminal activity is inadmissible to show that a defendant acted in conformity with those past acts or to show criminal propensity. Pa.R.E. 404(b)(1). However, evidence of prior bad acts may be admissible when offered to prove some other relevant fact, such

- 13 -

as motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. Pa.R.E. 404(b)(2). In determining whether evidence of other prior bad acts is admissible, the trial court is obliged to balance the probative value of such evidence against its prejudicial impact.

*Commonwealth v. Sitler*, 144 A.3d 156, 163 (Pa. Super. 2016) (*en banc*) (quoting *Commonwealth v. Sherwood*, 982 A.2d 483, 497 (Pa. 2009).[5]

The trial court admitted Appellant's driving record to show Appellant's "intent" to engage in reckless conduct. *See* TCO at 21-22. As we have discussed at length, *supra*, mere reckless conduct does not equate to the sustained recklessness required to establish "malice" such that a defendant has the *mens rea* for third degree murder. Appellant's past driving record and citations, insofar as the record indicates, similarly implicate questions of

---

[5] The trial court relied largely upon *Commonwealth v. Riggs*, 63 A.3d 780, 785 (Pa. Super. 2012), to support its admission of the instant, prior bad acts evidence to show Appellant's sustained recklessness. In *Riggs*, the defendant caused a crash which resulted in serious bodily injury to two victims. *Id.* Riggs had previously been involved in three high speed car chases during which he disregarded stop signs and red lights, abandoned his car and fled, and crashed into a parked car. *Id.* The Commonwealth successfully litigated a Pa.R.E. 404(b) motion to admit this evidence; on appeal, Riggs challenged the sufficiency of the evidence but not the propriety of the motion itself. *Id.* On appeal, this Court affirmed that the evidence had established the sustained recklessness necessary to show *mens rea*. *Id.*

However, to rely upon *Riggs* in this context is to rely on dicta. *See*, *e.g.*, *Castellani v. Scranton Times*, *L.P.*, 124 A.3d 1229, 1243 n.11 (Pa. 2015) (citing *Valley Twp. v. City of Coatesville*, 893 A.2d 885, 889 (Pa. Commw. 2006) (dicta is "an opinion by a court on a question that is directly involved, briefed, and argued by counsel, and even passed on by the court, but that is not essential to the decision. Dicta has no precedential value.")

ordinary recklessness rather than the sustained malice required to prove the *mens rea* for third degree murder. **See Kling**, 731 A.2d at 147-48, 150.

In **Commonwealth v. Sitler**, an *en banc* panel of this Court examined whether or not it was appropriate to admit evidence of prior crimes in a vehicular homicide case. **See Sitler**, 144 A.3d at 162. In **Sitler**, the defendant tailgated another driver, who indicated she was making a right turn. **Id.** at 159. The defendant then revved his engine and accelerated to the other driver's left, striking and killing a pedestrian standing in the center lane of the roadway. **Id.** At trial, the Commonwealth sought to introduce evidence of the defendant's prior conviction for vehicular manslaughter with substantially similar facts. **Id.** at 164. In the prior matter, the defendant, tailgating another driver in a dense fog, swerved around that car and hit an oncoming vehicle, killing the occupant. **Id.**

In deciding this issue, the **Sitler** Court was mindful of the prohibition against admitting such evidence solely to show the defendant's propensity to commit the instant crime. **Id.** at 163-64. Further, we noted the importance of a close factual nexus to demonstrate the connective relevance of the prior bad acts to the crime in question. **Id.** at 164. Specifically with regard to vehicular homicide, the *mens rea* required was that the defendant must consciously know and disregard a substantial unjustifiable risk, and that the risk the actor disregards is measured by the circumstances known to the actor. **Id.** We found that at least facially, the defendant should have known his conduct created a risk that he disregarded. **Id.** at 164. Further,

- 15 -

because in both cases the defendant was operating a motor vehicle too closely to another vehicle at excessive speeds, where another person died, the prior conviction was admissible to demonstrate that the defendant not only knew of the risk, but consciously disregarded it. *Id.* at 164.

Here, however, such a close factual nexus does not exist. Appellant's prior convictions and citations were for, respectively, reckless driving, careless driving, and speeding. Insofar as the record shows, no one was injured during these incidents, nor were the facts sufficiently similar to the tragic accident herein. Accordingly, they cannot be admitted to show that defendant should have known of the danger or the conscious disregard of such danger on the night of the accident. *See Sitler*, 144 A.3d at 164-65. Thus, the trial court committed an abuse of discretion in admitting this prior bad acts evidence. *See Dengler*, 890 A.2d at 379; *Sitler*, 144 A.3d at 164-65.

Next, the trial court admitted the video of two cars racing on a deserted street, as it imputed knowledge of the nature of the neighborhood to Appellant and to confirm Appellant's interest in drag racing. *See* TCO at 21-22. Here, this evidence simply was not relevant to prove knowledge such that it would overcome the potential prejudice of its introduction. *See*, *e.g.*, *Sitler*, 144 A.3d at 163. First, although there was some testimony that Sandmeyer Lane, as depicted in the video, was within proximity to Red Lion Road in Philadelphia, Pennsylvania, no witness testified that Sandmeyer Lane is near the neighborhood where the accident occurred. *See* N.T.,

- 16 -

7/10/15, at 97-101. Neither is Appellant actually visible in the video. Second, Appellant's interest in drag racing cannot be anything but propensity evidence, i.e., evidence to show that he was more likely to have been drag racing on the night of the accident. **See** Pa.R.E. 404(b)(1). The trial court points to no other relevant purpose for the admission of this video. **See**, **e.g.**, **Commonwealth v. Hicks**, --- A.3d ---, at *8 (Pa. 2017) (filed March 28, 2017). Accordingly, the court abused its discretion in admitting the Facebook video. **See Dengler**, 890 A.2d at 379; **Sitler**, 144 A.3d at 164-65.

However, despite the trial court's abuse of discretion in admitting this evidence, Appellant cannot show that he was prejudiced by its admission such that a new trial is required. This evidence was admitted by the trial court to show sustained recklessness. We have previously vacated Appellant's convictions for third degree murder; Appellant does not argue that the evidence was insufficient to establish his convictions for other crimes beyond third degree murder; and he admits that his actions were inexcusable and that he deserves punishment. **See** Appellant's Brief at 14, 28. Further, his convictions were supported by the testimony of numerous eyewitnesses and forensic evidence. **See** TCO at 2-9. Accordingly, a new trial is not required. **See**, **e.g.**, **Commonwealth v. Story**, 383 A.2d 155, 164 (1978) (noting that an error cannot be held harmless unless the appellate court determines that the error could not have contributed to the verdict).

Next, Appellant claims the trial court abused its discretion in denying his request for a jury charge on the issue of malice in the context of motor vehicle fatalities. *See* Appellant's Brief at 42. Appellant requested a charge based on the language of the holding in *Kling* instead of the standard jury instruction for third degree murder. *Id.* at 42 (citing *Kling*, 731 A.2d at 148 (noting that a defendant must display a conscious disregard for almost certain death or injury)). As we have already reversed Appellant's convictions for third degree murder, we need not reach the merits of this claim.

Finally, Appellant claims that the trial court abused its discretion by ignoring mitigating factors and ordering an excessive sentence. *See* Appellant's Brief at 44. Here, Appellant received consecutive terms of four to eight years for third degree murder and REAP. His sentences for involuntary manslaughter were merged with his convictions for murder. Accordingly, our disposition of Appellant's first issue may disturb the sentencing scheme of the lower court. *See Commonwealth v. Goldhammer*, 517 A.2d 1280, 1283-84 (Pa. 1986) (stating, "When a defendant challenges one of several interdependent sentences, he, in effect, challenges the entire sentencing plan."); *see also Commonwealth v. Williams*, 871 A.2d 254, 266-67 (Pa. Super. 2005) (noting that where this Court disturbs the court's overall sentencing scheme it is appropriate to remand for resentencing). Accordingly, we remand for resentencing, and

decline to address Appellant's claim regarding the discretionary aspects of his sentence.

Judgment of sentence for third degree murder reversed. For all remaining charges, Appellant's convictions are affirmed. Judgment of sentence for the remaining convictions vacated. Remanded for resentencing. Jurisdiction relinquished.

Judge Shogan joins the Opinion.

Judge Panella notes dissent.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/8/2017