TAMILIA, Judge.
This case was tried in a bench trial before the Honorable Lisa A. Richette on charges of murder,[1] voluntary manslaughter,[2] involuntary manslaughter,[3] simple assault[4] and aggravated assault,[5] reckless endangerment[6] and failure to stop, identify and render aid,[7] arising out of a homicide by vehicle on June 30, 1992, in the death of Jeremiah Cobb, age five, and injury to Terrell Dekeyser, also five years of age. After a number of preliminary and pretrial proceedings, on February 24,1993, the defendant, who was free on bail, entered a plea of not guilty as to all charges and proceeded to trial before Judgé Richette.
Following trial, appellant was adjudicated guilty of third degree murder, simple assault, reckless endangerment and failure to stop and identify. After exhausting his post-trial remedies, the trial court sentenced appellant to four (4) to ten (10) years’ imprisonment for third degree murder and three *17 (3) to six (6) months for reckless endangerment and three (3) to six (6) months for simple assault, with the sentences to run consecutively. The sentence for violation of the Motor Vehicle Code was suspended.
The sole issue presented by appellant for review by this Court is whether the evidence was sufficient to establish the elements required to convict for third degree murder. Appellant interjects the weight of the evidence issue in the sufficiency of the evidence question.
As to the weight of the evidence claim, the Supreme Court has held that the weight of evidence given to particular facts at trial is largely within the discretion of the trier of fact, in this case the trial judge, and short of total distortion of the facts as determined by the trial court or ignoring a critical fact, the appellate court may not disturb the findings nor substitute its judgment for that of the trial court. See Commonwealth v. Nelson, 514 Pa. 262, 523 A.2d 728 (1987); Commonwealth v. Wallace, 522 Pa. 297, 561 A.2d 719 (1989). Because of dicta in the above cases there was some question as to whether this Court had the right to entertain a challenge to the weight of the evidence. However, in Commonwealth v. Murray, 408 Pa.Super. 435, 597 A.2d 111 (1991) (en banc), this Court held that such a challenge was reviewable. Nevertheless, our review of the evidence clearly supports the trial court’s ruling on the weight of the evidence. This leaves only the issue of whether the evidence was sufficient to sustain a finding of third degree murder. We believe it does.
When reviewing a challenge to the sufficiency of the evidence, we must determine whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, and granting the Commonwealth all reasonable inferences deducible therefrom, the evidence is sufficient to establish all the elements of the offenses beyond a reasonable doubt. Commonwealth v. MacArthur, 427 Pa.Super. 409, 629 A.2d 166 (1993); Commonwealth v. Hilfiger, 419 Pa.Super. 450, 615 A.2d 452 (1992). Malice is the crucial element in question in this review as it is the element which distinguishes *18 murder from other types of homicide. Commonwealth v. White, 366 Pa.Super. 538, 531 A.2d 806 (1987). Specifically, malice is the distinguishing factor between murder and manslaughter. Commonwealth v. Seibert, 424 Pa.Super. 242, 622 A.2d 361 (1993). Under the Crimes Code, the offense of third degree murder incorporates common law malice as an element. 18 Pa.C.S. §§ 2501, 2502(c). That section adheres to the traditional definitions of malice set forth in Commonwealth v. Drum, 58 Pa. 9 (1868):
Malice is a legal term, implying much more. It comprehends not only a particular ill-will, but every case where there is wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured. Murder, therefore, at common law embraces cases where no intent to kill existed, but where the state or frame of mind termed malice, in its legal sense, prevailed.
Malice necessary to support a murder conviction may also exist where a reasonable principal acts in gross deviation from a standard of reasonable care, failing to perceive that such actions might create a substantial and unjustifiable risk of death or serious bodily injury. Stidham v. Millvale Sportsmen’s Club, 421 Pa.Super. 548, 618 A.2d. 945 (1992).
A finding of malice based on a “recklessness of consequences” requires that a defendant be found to have consciously disregarded an unjustified and extremely high risk that his actions might cause death or serious bodily injury. See Commonwealth v. Fierst, 423 Pa.Super. 232, 245, 620 A.2d 1196, 1203 (1993). The Commonwealth, in support of its position that the evidence established that appellant acted with malice, points to Commonwealth v. Urbanski, 426 Pa.Super. 505, 627 A.2d 789 (1993) and Commonwealth v. Pigg, 391 Pa.Super. 418, 571 A.2d 438 (1990).
The crucial facts immediately prior to the fatal consequences of appellant’s reckless behavior are found by the trial court in the testimony of the investigating officer, Robert Byrne. The testimony of Officer Byrne, that the failure of *19 appellant to brake as he scraped a vehicle and then swerved onto the sidewalk striking a concrete planter and then the children produced the fatal result, spanned 33 pages in the trial transcript (T.T., 2/24/93, pp. 25-58). At the estimated speed of the vehicle, 26 miles per hour, the expert testified it would have taken 30 feet to stop. The fatalities would not have occurred if appellant had simply applied the brakes. Instead, when the Cadillac in front of him at the intersection came to a screeching halt, appellant swerved until he was entirely on the sidewalk, apparently never braking, and continuing on his way after striking the children (T.T. at 63-64). Other witnesses testified as to the wanton recklessness and disregard of social consequences to bring the facts of this case within the requirements for third degree murder.
Witness Jean Hargrove saw him speeding one-half block away and “told him to slow down” and “he said, shut up” (T.T. at 68). “He was going fast. Like on the expressway” (T.T. at 68). He then swerved onto Susquehanna and Woodstock without stopping and drove over the curb at 2200 Woodstock.
Teresa Thompson testified she was attempting to cross the street at 2100 Woodstock when appellant approached from the 2000 block of Woodstock traveling 60 miles per hour. “My daughter Jean hollered to him, hey, slow down. He did not slow down” (T.T. at 72).
The witness testified there were about 10 children playing in the block and the court took judicial notice of the fact that in warm weather many children play in the street (T.T. at 70). Richardson Burgess testified he was sitting at 2222 Woodstock when appellant’s car hit his car, swerved between a barrier pole and telephone pole onto the sidewalk traveling 50 to 55 miles per hour. He reflected [sic] off a house, hit the sidewalk and steps and kept going — -he kept accelerating. He never intended to stop- — he showed no signs of stopping (T.T. at 77-78).
Jeanette Rosario testified the appellant’s car came speeding down the block, came over the curb on two wheels, struck the children and, despite her pleas to stop, continued on. She *20 testified he was going more than 25 miles per hour — “real fast — about 60.” (T.T. at 84-85.)
Motor vehicle cases, where our appellate courts have sustained malice/murder convictions, all contain the element of sustained recklessness by the actor in the face of perceptible risk of harm to another person or persons who became victims. The facts derived from the testimony above detail precisely the type of behavior before, during and after the event which must be judged to have been done with a conscious disregard of an unjustified and extremely high risk that appellant’s actions might cause death or serious bodily injury.
Here, appellant was driving an older, heavy and high-powered vehicle, at a high rate of speed in a crowded residential neighborhood, and at a time when children play in the streets and on sidewalks in large numbers. He ignored a stop sign, almost colliding with a vehicle in the intersection. He was told to slow down and responded with “shut up.” After traversing the intersection, apparently without slowing down or braking, he sideswiped another car and swerved onto the curb where he ran into a cement flower container and the children, and without attempting to stop, continued up the street despite calls from bystanders to stop. At no time did it appear appellant was merely reckless, but rather he drove his car as though it were a guided missile which predictably would result in loss of life or serious injury to innocent persons, such as occurred here. The result was just as predictable as if appellant had pointed and fired a gun down the crowded street with people in the line of fire. While the victims could not be foretold with certainty, the likelihood that someone would be injured or killed was highly predictable and certain. This is not a case where it can be said the appellant unintentionally caused the death of another person while violating the law. Malice can be inferred by his refusing to slow down when called upon to do so, shouting “shut up” to the citizen, running a stop sign endangering another motorist in the intersection, sideswiping a car and, with no evidence of braking and some evidence of steering onto the sidewalk between telephone poles and sidewalk guards, continuing on after striking the *21 children, disregarding calls to stop and then fleeing from the scene further up the street when the car stalled. This is not merely homicide by vehicle where an unintentional death is caused by a relatively benign violation of the Motor Vehicle Code or other statute or municipal ordinance. This surpasses the recklessness described as a gross deviation from the standard of conduct that a reasonable person would observe in the actor’s situation. Malice may be implied from the sustained disregard for the lives and safety of people and vehicles in the path of appellant’s vehicle, despite calls to desist and refusing to avail himself of the opportunity to avoid the ultimate harm, loss of the life of the child, simply by applying his brakes when his car swerved or was guided onto the sidewalk. Urbanski and Pigg, supra, cited by the Commonwealth, clearly support the finding of malice based on the facts of this case. The Urbanski Court stated:
Appellant also claims that there was insufficient evidence of malice to support a conviction for third degree murder. Malice, defined as a recklessness of consequences, a mind regardless of social duty, an unjustified disregard for the probability of death or great bodily harm or an extreme indifference to the value of human life, see Commonwealth v. Carroll, 412 Pa. 525, 531, 194 A.2d 911 (1963), can be established by a high blood alcohol content, the absence of weather or road conditions that would explain an accident and an awareness of potential danger. See Commonwealth v. Taylor, 461 Pa. 557, 337 A.2d 545, 548 (1975). Further, a finding of malice is supported where an accused drives recklessly immediately prior to the accident and ignores the request of another to stop driving. Commonwealth v. Pigg, 391 Pa.Super. 418, 571 A.2d 438, 442, alloc. denied, 525 Pa. 644, 581 A.2d 571 (1990).
Id. 426 Pa.Super. at 513, 627 A.2d at 793 (emphasis added).
Death by motor vehicle is probably the leading cause of traumatic death in this country. According to the National Highway Traffic Safety Administration over 40,000 persons were killed in traffic fatalities in 1991. In recent years, despite substantial increased numbers of drivers, there has *22 been a steady decline in motor vehicle deaths and injuries because of vigorous enforcement of drunk driving and speeding laws. With augmented penalties for controllable behavior such as drunk driving and speeding, society has responded by heightened self-policing of the prohibited behavior. The law has also distinguished the unintentional vehicular homicide resulting from simple negligence and homicide while violating a law but still unintentional. We must make a further distinction between the unintentional vehicular homicides and homicides due to reckless behavior from those as here, where behavior is so focused and deviant that the wantonness of it calls upon a reasonable trier of fact to find malice to be implied. Paradoxically, despite the recent improvement of reasonable persons in controlling antecedent behavior such as drinking, to avoid vehicular accidents and homicides, there is a substantial increase in motor vehicle crimes such as car snatching, car theft and fleeing from the police or using the vehicle in the commission of crimes such as drive-by shootings and robberies. When the actor so far crosses the line of reasonableness, concern for the safety of others and refuses to heed cautionary calls to desist, malice must be implied. Any person who attempts to emulate the driving patterns exhibited in any of the “French Connection,” “Smokey and the Bandit” or “Beverly Hills Cops” films on city streets crowded with children and others, the predictable victims of the irrational behavior, cannot escape having malice implied to his actions. Motor vehicles still outdistance firearms as the most dangerous instrumentality in the hands of irresponsible persons in our society today.
Judgment of sentence affirmed.
CAVANAUGH, J., dissents.

. 18 Pa.C.S. § 2502.

. Id., § 2503.

. Id., § 2504.

. Id., § 2701.

. Id., § 2702.

. Id., § 2705.

. Id., 75 Pa.C.S. § 3742.