J. S63007/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :     IN THE SUPERIOR COURT OF
                         :         PENNSYLVANIA
           v.             :
                         :
WILLIAM ORTIZ,               :        No. 3301 EDA 2014
                         :
          Appellant    :

Appeal from the Judgment of Sentence, June 18, 2014,
in the Court of Common Pleas of Philadelphia County
Criminal Division at Nos. CP-51-CR-0001116-2012,
CP-51-CR-000-1119-2012, CP-51-CR-0001122-2012,
CP-51-CR-0001561-2012

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN AND FITZGERALD,* JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:      **FILED NOVEMBER 22, 2016**

William Ortiz appeals the judgment of sentence in which the Court of Common Pleas of Philadelphia County, after a jury trial, sentenced him to serve an aggregate of 36 to 72 years' imprisonment for four counts of aggravated assault, four counts of possession of an instrument of crime, possession of a firearm prohibited, firearms not to be carried without a license, and carrying firearms on public streets in Philadelphia.[1]

The facts as recounted by the trial court are as follows:

> On July 5, 2011, Sergeant Joseph McDonald responded to a call for multiple gunshots in the area

---

* Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2702(a), 907(a), 6105(a)(1), 6106(a)(1), and 6108, respectively.

of Ann Street and Amber Street in Philadelphia, Pennsylvania. Sergeant McDonald pulled onto Bellmore Avenue, saw people congregated, and began to clear the area and mark it off as a crime scene. Counsel stipulated to three people being wounded by gunshots: Angel Rodriguez, Sianie Pena, and [appellant]. Sergeant McDonald testified the street was littered with numerous shell casings from a handguns [sic] and a shotgun. Sergeant McDonald further testified a blue van, pickup truck, and house near the scene were riddled with bullet holes. . . .

. . . . Officer Ronald Weitman, stipulated as an expert in ballistics and firearms identification, testified that a total of nine fired cartridge casings from a .45 caliber gun, eight fired cartridge casings from a .40 caliber gun, and seven fired cartridge casings from a .380 caliber gun were all recovered near the intersection of Orleans and Amber Street's [sic].

On July 5, 2011, at approximately 5:30 [p.m.], Angel Rodriguez, entered a grocery store at the corner of Bellmore Avenue and Amber Street, to buy a soda. Mr. Rodriguez left the store and crossed Amber Street, when he was shot in his right rib cage. . . . . Mr. Rodriguez did not sustain damage to any organs or vital areas. In his statement made to detective Ronald Aitken on July 12, 2011, Mr. Rodriguez stated that "This guy ([appellant]), he was in the same store I was in when the shooting [occurred]." However, at trial, Mr. Rodriguez testified that he could not recall seeing [appellant] in the store with him, and stated he knew [appellant] from the neighborhood. Mr. Rodriguez testified he heard gunfire from both directions on Amber Street from Orleans Street to Stella Street.

Sianie Pena, a two-year-old victim, was playing in the backyard of her godfather's house when a stray bullet struck her. . . . Sianie suffered a gunshot wound to her right shoulder. On July 18, 2011, the bullet was removed surgically.

[Appellant] suffered gunshot wounds to his lower left quadrant, right lower quadrant, and right back area. [Appellant] was taken to Episcopal Hospital by his friends, Isaias Justiniano and Jose Melendez. [Appellant] underwent surgery and was released on July 16, 2011.

Detective Leahy testified that Mr. Justiniano's statement from . . . July 6, 2011, indicated, "I noticed that Wreck[Footnote 1] [appellant] was trying to get into his car and as he tried to get up the first time, he fell to his knees. He got back up and then I noticed as he tried to get back up that he dropped a few things from his hands. I couldn't tell what he was dropping[,] but I heard a loud clang when whatever it was hit the ground." Detective Leahy further testified that he took Mr. Justiniano's statement verbatim, and Mr. Justiniano was given an opportunity to make any changes to his statement after he reviewed it. Detective Leahy testified that two other individuals, Angel Castro and Julio Medina, were arrested with [appellant] and Mr. Justiniano, in relation to the shooting on July 5, 2011.

> [Footnote 1] The written statement indicates "Rec" as the alias for [appellant] but the Notes of Testimony indicate "Wreck."

. . . . At trial, Mr. Justiniano testified that he did not recall that part of his statement, and claimed that the word "clang" was not a part of his vocabulary. Mr. Justiniano further testified he had seen [appellant] drop his phone and keys, and it must have been the phone that made the "clang" noise. Mr. Justiniano testified that the reason he failed to tell the detectives that [he] saw [appellant] drop anything was that he was trying to make his statement as short as possible, and wanted to leave.

At trial, Mr. Melendez testified he did not know [appellant] by any name other than William Ortiz. Mr. Melendez testified he did not see [appellant] drop a gun at the scene of the crime, or mention a

gun at all to Detective Ronald Aitken, who took Mr. Melendez['s] statement. However, Mr. Melendez's testimony was contradictory to his statement made to Detective Aitken on July 6, 2011 and July 12, 2011. In his statement made on July 6, 2011, Mr. Melendez referred to [appellant] as "Wreck" multiple times, and acknowledged the name "Wreck" in response to questions made by Detective Aitken. In the same statement, Mr. Melendez stated he saw [appellant] drop a "dark-colored gun." In his statement made to Detective Aitken on July 12, 2011, Mr. Melendez stated the reason [appellant] was out on the block that particular day was because he "hustles around the area." Mr. Melendez testified that the statement he gave on July 12, 2011, was just a regurgitation of the statement he made on July 6, 2011. Mr. Melendez testified that he did not ID [appellant] with a gun on the night of the shooting. However, in his statement made on July 12, 2011, Mr. Melendez confirmed for the detective that he had identified [appellant] with a gun on the night of the shooting. Mr. Melendez further testified that the statements he made to Detective Aitken on July 6, 2011, and July 12, 2011 were both dated, signed, and reviewed by Mr. Melendez.

Trial court opinion, 1/30/16 at 2-6 (citations omitted).

Following appellant's convictions and sentencing, appellant filed a post-sentence motion which was denied by operation of law on October 27, 2014.

Appellant raises the following issues before this court:

> I.   Whether [appellant] is entitled to an arrest of judgment and/or new trial in the above-captioned matter on the ground that the verdict is against the weight of the evidence since the Commonwealth's own witnesses placed [appellant] inside the corner store at Amber and Bellmore Streets at the time of the

- 4 -

shooting and the wounds on [appellant's] body were inconsistent with him being one of the shooters involved in the incident in question?

II. Whether [appellant] is entitled to an arrest of judgment in the above-captioned matter on the ground that the evidence was insufficient to sustain [appellant's] conviction at CP-51-CR-0001119-2012 (complt. Julio Medina) and CP-51-CR-0001122-2012 (complt. Angel Castro) since the Commonwealth's evidence failed to establish that [appellant] was one of the shooters in the incident in question and also failed to establish that complainants Julio Medina and Angel Castro were even present at the scene at the time of the incident?

III. Whether [appellant] is entitled to an arrest of judgment in the above-captioned matter on the ground that the evidence was insufficient to sustain [appellant's] convictions at CP-51-CR-0001116-2012 (complt. Angel Rodriguez) and CP-51-CR-0001561-2012 (complt. Siani[e] Pena) since [appellant] was acquitted of Conspiracy (F1) and the Commonwealth's evidence failed to establish that [appellant] fired the shots which struck either Angel Rodriguez or Siani[e] Pena and in fact, failed to even establish that [appellant] was a shooter in the alleged incident giving rise to the charges?

IV. Whether [appellant's] sentence of 15-30 years for Aggravated Assault (F1) at CP-51-CR-0001561-2012 should be vacated on the ground that the sentence is illegal in that it exceeds the statutory maximum established by 18 Pa.C.S.[A.] § 1103?

V. Did the lower court err in denying [appellant's] request for a mistrial after the prosecutor committed prosecutorial misconduct by improperly stated [sic] in closing argument,

- 5 -

> "tell [appellant] it's not okay to turn your neighborhoods into a shooting gallery."?

Appellant's brief at 3-4.

Initially, appellant contends that he is entitled to an arrest of judgment and/or a new trial because the verdict was against the weight of the evidence in that the Commonwealth's own witnesses placed appellant inside a corner store at the time of the shooting and appellant's wounds were inconsistent with him acting as one of the shooters. Specifically, appellant argues that because Angel Rodriguez testified that appellant was in the store at the corner of Bellmore and Amber Streets, that meant he could not be at the corners where the shooting took place. Similarly, appellant argues that the fact that he sustained gunshot wounds to both sides of his body indicated that he was caught in a crossfire of two groups of shooters as opposed to him acting as a shooter.

> [T]he weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact . . . thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence, . . . rather, appellate review is limited to whether the

> trial court palpably abused its discretion in ruling on the weight claim.
>
> ***Commonwealth v. Kim***, 888 A.2d 847, 851 (Pa.Super. 2005) (citations and quotations omitted). A motion for a new trial based on a challenge to the weight of the evidence concedes the evidence was sufficient to support the verdict. ***Commonwealth v. Davis***, 799 A.2d 860, 865 (Pa.Super. 2002).

***Commonwealth v. Jarowecki***, 923 A.2d 425, 433 (Pa.Super. 2007).

With respect to this issue of whether the verdict was against the weight of the evidence, the trial court reasoned:

> Although in his statement to Detective Aitken, Mr. Rodriguez stated [appellant] was with him in the store right before the shooting, at trial he testified that he could not recall [appellant] being in that store. As Mr. Rodriguez indicated different facts at different times, it is well within the discretion of the jury to determine which facts are true. The jury heard the mere inconsistency in Mr. Rodriguez's testimony but was still able to determine the facts of the case.
>
> [Appellant] contends that his wounds were inconsistent with him being one of the shooters involved in the incident. There was no evidence presented to infer the injuries sustained by [appellant] were inconsistent with him being one of the shooters in the incident. The injuries [appellant] sustained to his lower left quadrant, lower right quadrant, and right back area, could have all been sustained during, or after, his direct involvement in the shooting. There is circumstantial evidence demonstrating [appellant] was in a shootout, and he could have been wounded at any point.

Trial court opinion, 1/30/16 at 9.

This court determines that the trial court did not abuse its discretion. Rodriguez presented conflicting evidence. The jury, as the fact-finder, had the authority to believe all, part, or none of Rodriguez's testimony. **See** **_Commonwealth v. Keaton_**, 729 A.2d 529, 540 (Pa. 1999). In addition, the trial court correctly stated that there is nothing in the record to support appellant's contention that the location of his wounds proves that he was not one of the shooters. The evidence appellant cites does not lead to the conclusion that the jury's verdict shocked one's sense of justice.

Appellant next contends that he is entitled to an arrest of judgment on the basis that the evidence was insufficient to sustain his convictions at CP-51-CR-0001119-20112 and CP-51-CR-0001122-2012 because the Commonwealth's evidence failed to establish that he was one of the shooters at the incident and failed to establish that the complainants Julio Medina ("Medina") and Angel Castro ("Castro") were present at the scene at the time of the incident.[2] Appellant asserts that the record does not contain any evidence that either Medina or Castro were present at the time of the shooting, were intended targets, or were harmed in any way. Further, appellant asserts that the Commonwealth failed to produce any eyewitness testimony that identified him as a participant in the shooting.

> A claim challenging the sufficiency of the evidence is a question of law. **_Commonwealth v. Widmer_**, 560 Pa. 308, 319, 744 A.2d 745, 751

---

[2] Appellant was charged under four different docket numbers. Two of them listed the complainants as Julio Medina and Angel Castro, respectively.

(2000). In that case, our Supreme Court set forth the sufficiency of the evidence standard:

> Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. ***Commonwealth v. Karkaria***, 533 Pa. 412, 625 A.2d 1167 (1993). Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. ***Commonwealth v. Santana***, 460 Pa. 482, 333 A.2d 876 (1975). When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. ***Commonwealth v. Chambers***, 528 Pa. 558, 599 A.2d 630 (1991).

> ***Id.*** at 319, 744 A.2d at 751.

***Commonwealth v. Morgan***, 913 A.2d 906, 910 (Pa.Super. 2006).

A person will be found guilty of aggravated assault if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S.A. § 2702(a)(1). The term "serious bodily injury" is defined by statute as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent

disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301.

> [T]he charge of aggravated assault can be supported . . . if the evidence supports a finding of an attempt to cause such injury. A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime. An attempt under Subsection 2702(a)(1) requires some act, albeit not one causing serious bodily injury, accompanied by an intent to inflict serious bodily injury.

*Commonwealth v. Martuscelli*, 54 A.3d 940, 948 (Pa.Super. 2012) (quotations and quotation marks omitted).

Where the victim suffers serious bodily injury, the Commonwealth is not required to prove specific intent. *Commonwealth v. Nichols*, 692 A.2d 181, 185 (Pa.Super. 1997). Instead, the Commonwealth must establish that the defendant acted recklessly under circumstances that manifested an extreme indifference to the value of human life. *Id.* In order to prevail on a theory of recklessness, the Commonwealth must prove that the defendant acted with malice. *Commonwealth v. Bruce*, 916 A.2d 657 (Pa.Super. 2007).

> Malice exists where there is a "wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured." *Commonwealth v. Pigg*, 391 Pa.Super. 418, 571 A.2d 438, 441 (1990), *appeal denied*, 525 Pa. 406, 581 A.2d 565

- 10 -

(1990) (quoting ***Commonwealth v. Drum***, 58 Pa. 9, 15 (1868). Where malice is based on a reckless disregard of consequences, it is not sufficient to show mere recklessness; rather, it must be shown the defendant consciously disregarded an unjustified and extremely high risk that his actions might cause death or serious bodily injury. ***See Commonwealth v. Scales***, 437 Pa.Super. 14, 648 A.2d 1205, 1207 (1994), ***appeal denied***, 540 Pa. 640, 659 A.2d 559 (1995) (regarding third degree murder). A defendant must display a conscious disregard for almost certain death or injury such that it is tantamount to an actual desire to injure or kill; at the very least, the conduct must be such that one could reasonably anticipate death or serious bodily injury would likely and logically result. ***See [Commonwealth v.] O'Hanlon***, . . . [539 Pa. 478,] 653 A.2d [616] at 618 [(1995)] (regarding aggravated assault).

[***Commonwealth v.***] ***King***, 731 A.2d [145] at 147-148 [(Pa.Super. 1999)].

***Bruce***, 916 A.2d at 664.

With respect to this sufficiency issue, the trial court determined:

There is sufficient circumstantial evidence to prove [appellant] possessed the intent to shoot and thus cause serious bodily injury to Julio Medina and Angel Rodriguez. Based on Mr. Justiniano's testimony, a reasonable jury could conclude that the "clang" noise he heard when he observed [appellant] drop a few things from his hands, was in fact a gun. A reasonable jury could also conclude that [appellant] possessed a gun based on Mr. Melendez's testimony that he saw [appellant] drop a "dark-colored gun." Mr. Melendez testified that [appellant] was out on the block that particular day

- 11 -

> . . . because he "hustles around the area." The circumstantial evidence indicates that the shooting occurred due to a dispute concerning the area in which [appellant] "hustled." While there was inconsistent testimony as to Julio Medina and Angel Castro's involvement in the shooting, they were both arrested on the same day of the shooting. The totality of circumstantial evidence is adequate to enable a reasonable jury to conclude that [appellant] intended to shoot Julio Medina and Angel Castro, but instead struck Angel Rodriguez and Sianie Pena.

Trial court opinion, 1/30/16 at 10-11 (citations omitted).

The record reflects that Angel Rodriguez testified that he observed gunshots coming from two directions with a group of five to ten teenagers on Stella Street and a similar sized group on Orleans Street. (Notes of testimony, 4/1/14 at 101-102.) Appellant was shot multiple times in this incident. Jose Melendez testified when reading from his statement that he saw appellant drop a gun. (Notes of testimony, 4/3/14 at 125-126.) Further, Isaias Justiniano ("Justiniano"), who pled guilty to aggravated assault in the same incident, stated to the police that he heard a loud "clang" when appellant fell to the ground after he was shot, though Justiniano did not recall making that statement when he testified. (Notes of testimony, 4/2/14 at 80-81.) Police recovered approximately 25 cartridge casings from the corner where appellant had been seen. (Notes of testimony, 4/3/14 at 74-82.) Justiniano testified that Medina and Castro were arrested in the shooting incident as well. (Notes of testimony, 4/2/14 at 102.) A jury could reach the conclusion that appellant intended to shoot

Medina and Castro by firing into the group of people which included them but instead struck Angel Rodriguez and Sianie Pena. There is circumstantial evidence which is sufficient to prove the elements of the offense. **See Commonwealth v. Sanchez**, 82 A.3d 943, 972 (Pa. 2013). The evidence was sufficient to warrant a conviction for aggravated assault with respect to appellant's intent to inflict serious bodily injury on Medina and Castro.

Appellant next contends that he is entitled to an arrest of judgment on the basis that the evidence is insufficient to sustain his convictions at CP-51-CR-0001116-2012 and CP-51-CR-0001561-2012 for aggravated assault because he was not convicted of conspiracy and the Commonwealth's evidence failed to establish that appellant fired the shots that struck either Angel Rodriguez or Sianie Pena and failed to establish that appellant was a shooter in the alleged incident that gave rise to these charges. Appellant argues that no legal theory exists under which he could be held criminally liable for the injuries to Rodriguez and Pena other than if the Commonwealth had established that he actually fired the shots which struck these victims.

With respect to this issue, the trial court opined:

> [Appellant] clearly acted with extreme indifference to human life. All evidence presented indicates [appellant] fired a gun on a public, residential street with multiple people around, ultimately ending with both Angel Rodriguez and two year old Sianie Pena sustaining injuries. Shooting multiple rounds, to the extent of leaving vehicles and homes riddled with bullet holes, clearly constitutes an offensive act, that under the circumstances, could almost assure that injury or death will occur. In

- 13 -

> ***Commonwealth v. Daniels***, [354 A.2d 538, 539 (Pa. 1976)], [t]he Supreme Court of Pennsylvania held there was sufficient evidence of aggravated assault where the defendant fired a number of shots in a barroom full of people, striking one bystander. [***Id.***]  The court held this action constituted reckless conduct which manifested extreme indifference to the value of human life, and that the appellant's actions caused serious bodily injury to another. ***Id.*** In the instant case, Mr. Rodriguez sustained a gunshot wound to his right rib cage and two year old Sianie Pena also sustained a gunshot wound to her right shoulder, which required surgery to remove the bullet, when [appellant] fired multiple gunshots on a crowded street.  Mr. Rodriguez's and Sianie Pena's injuries both rise to serious bodily injury as [appellant] demonstrated an extreme indifference to human life by firing multiple gunshots into a crowded street.

Trial court opinion, 1/30/16 at 11-12.

This court essentially agrees with the trial court.  Evidence was produced that indicated that appellant was on the corner where the shooting took place, that he was seen with a gun, shots were fired from the two groups, and that Angel Rodriguez and Sianie Pena were struck by gunfire in the area.  Although there is no direct evidence to establish that appellant shot Rodriguez and Pena, there is circumstantial evidence which is sufficient to prove the elements of the offense.  ***See Sanchez***.

Appellant next contends that his sentence of 15 to 30 years for aggravated assault at CP-51-CR-0001561-2012 should be vacated on the ground that the sentence is illegal in that it exceeds the statutory maximum set forth in 18 Pa.C.S.A. § 1103.  Appellant argues that the maximum

sentence for this crime was 20 years. The trial court and the Commonwealth agree with appellant. A review of Section 1103 confirms appellant's contention. The Commonwealth asks that this court should remand to the trial court for resentencing on all offenses.

In **Commonwealth v. Goldhammer**, 517 A.2d 1280 (Pa. 1986), **cert. denied**, 480 U.S. 950 (1987), our supreme court held that proscriptions against double jeopardy do not prevent an appellate court from remanding for sentencing on all bills of information when the vacation of various portions of the sentence could undermine the trial court's sentencing scheme.

Where, as here, appellant was sentenced on multiple charges stemming from the same incident, it is possible that the vacation of the aggravated assault conviction and remand for resentencing could alter the sentencing scheme of the trial court. Here, the trial court with respect to the Angel Rodriguez complaint sentenced appellant to a term of 9 to 18 years' imprisonment for aggravated assault, to a consecutive term of 5 to 10 years' imprisonment for possession of a firearm prohibited, to a consecutive term of 3 to 6 years' imprisonment for carrying a firearm in public in Philadelphia, and to a consecutive term of 2 to 4 years' imprisonment for possession of an instrument of crime. With respect to the Julio Medina complaint, the trial court sentenced appellant to a term of 7½ to 15 years' imprisonment for aggravated assault and to a term of 2 to

4 years' imprisonment for possession of an instrument of crime. These sentences were concurrent to the "Rodriguez complaint" sentence. With respect to the Angel Castro complaint, the trial court sentenced appellant to a term of 7½ to 15 years' imprisonment for aggravated assault and to a term of 2 to 4 years' imprisonment for possession of an instrument of crime. These sentences were concurrent to the "Rodriguez complaint" sentence. With respect to the sentence that we have determined was illegal, the trial court sentenced appellant to a consecutive term of 15 to 30 years' imprisonment for aggravated assault. He was also sentenced to a concurrent term of 2 to 4 years' imprisonment for possession of an instrument of crime. Because the vacated 15 to 30-year sentence affects the trial court's overall sentencing scheme, we will agree to the request of the Commonwealth and vacate this sentence and remand to the trial court to resentence appellant.

Finally, appellant contends that the trial court erred when it denied his request for a mistrial after the prosecutor committed prosecutorial misconduct when he stated in his closing argument, "And I'm asking you now to tell [appellant] it's not okay to turn your neighborhoods into a shooting gallery." (Notes of testimony, 4/4/14 at 61.)

> Our standard of review for a claim of prosecutorial misconduct is limited to whether the trial court abused its discretion. In considering this claim, our attention is focused on whether the defendant was deprived of a fair trial, not a perfect one. Not every inappropriate remark by a

> prosecutor constitutes reversible error. A prosecutor's statements to a jury do not occur in a vacuum, and we must view them in context. Even if the prosecutor's arguments are improper, they generally will not form the basis for a new trial unless the comments unavoidably prejudiced the jury and prevented a true verdict.

*Commonwealth v. Bedford*, 50 A.3d 707, 715-716 (Pa.Super. 2012) (internal citations and quotations omitted).

In *Commonwealth v. Patton*, 985 A.2d 1283 (Pa. 2009), in a murder trial, the prosecutor in her closing argument, stated, "[A]nd the second message I want to send to [Neal Lamont Patton ("Patton"), the defendant] is to tell him he can't get away with murder." *Patton*, 985 A.2d at 1285. Patton objected. The trial court agreed to give a curative instruction and failed to do so. The jury convicted Patton of first degree murder. This court affirmed. On appeal to the Pennsylvania Supreme Court, Patton argued that the prosecutor's statement was *per se* prejudicial. The Pennsylvania Supreme Court affirmed on the basis that while the comment was inappropriate, it was not so much so as to deny Patton a fair trial. *Id.* at 1285-1286. Our supreme court also held that "Prosecutorial remarks encouraging a jury to 'send a message' to the defendant, rather than the community or criminal justice system, do not invite consideration of extraneous matters and are not misconduct." *Id.* at 1288.

Similarly, here the prosecutor did not ask the jury to send a message to the community but to appellant as in *Patton*. This issue has no merit.

Convictions affirmed.  Judgment of sentence vacated.  Case remanded for resentencing.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>11/22/2016</u>