J-S66016-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| KEVIN BLAIR HOOKS, | : | |
| | : | |
| Appellant | : | No. 9 WDA 2017 |

Appeal from the Judgment of Sentence November 9, 2016
In the Court of Common Pleas of Beaver County Criminal Division at
No(s): CP-04-CR-0002122-2015

BEFORE: BENDER, P.J.E., DUBOW, J., and PLATT*, J.

MEMORANDUM BY DUBOW, J.: **FILED DECEMBER 06, 2017**

Appellant Kevin Blair Hooks appeals from the Judgment of Sentence entered by the Beaver County Court of Common Pleas after a jury found him guilty of Third-Degree Murder. Appellant challenges the sufficiency and weight of the evidence. After thorough review, we affirm.

We have gleaned the following facts from the trial court's Pa.R.A.P. 1925(a) Opinion and the certified record. On August 29, 2015, Donald Ours and Sandra Jergons heard banging and rumbling noises that sounded like a physical fight emanating from an apartment above theirs in the Mulberry Apartments located in New Brighton. Moments later they heard Deborah Hill-Payne ("Debbie"), their upstairs neighbor, yelling "stop" and "help." Mr. Ours called 911, and both Mr. Ours and Ms. Jergons ran upstairs, where they found Debbie lying on the floor in the hallway, gasping for breath and covered with blood. Joyce Moore, who lived in a house directly across the

_____

\* Retired Senior Judge assigned to the Superior Court.

street from the Mulberry Apartments, also heard a woman screaming in the apartment building, looked out her window, and saw a white male running out of the building and into an alleyway shortly after she heard the screams.

The paramedics arrived within minutes, and building residents led them to Debbie who was lying on the second floor hallway, loosely holding a bloody knife in her hand. The medics discovered that she had multiple stab wounds to her chest and abdomen, including a deep cut that lacerated her right pulmonary artery. She also had defensive wounds on her hands and left arm. They transported Debbie to the hospital where she died from her injuries.

As police officers were leaving the police station, located three blocks from the Mulberry Apartments, to respond to Mr. Ours's 911 call, they encountered Appellant in the parking lot. His pants and shirt were covered in blood, he had scratches on his head and a cut on the fingers of his right hand, and he was screaming that he had been stabbed. Officer Rodney Biskup called for an ambulance and waited with Appellant. Appellant told Officer Biskup that he had grabbed the kitchen knife from Debbie, who had tried to stab him with it because she wanted money from him that he did not have.

At Debbie's apartment, police officers photographed an overturned table in the living room and blood throughout the living room and in the hallway leading out the door. Laboratory testing revealed blood belonging to

both Debbie and Appellant on Debbie's clothing, Appellants' clothing, and the knife. Debbie also had Appellant's blood under her fingernails.

Police officers arrested Appellant, and charged him with murder.[1] At the police station, "Appellant was advised of his *Miranda* rights and consented to having the interview recorded." Trial Ct. Op., dated 1/27/17, at 30.[2] In that interview, Appellant indicated, *inter alia*, that he had been buying crack cocaine from Debbie over a period of the several months before the incident. He stated that on the day of the incident, Debbie told Appellant that the person selling her the crack would no longer sell to her because she had vouched for Appellant and Appellant had not paid as promised. He said that she grabbed the kitchen knife, and he tried to wrestle it from her. He stated that Debbie got stabbed in the chest when he was holding her wrist and trying to pull her into a chokehold. Appellant denied that he ever held the knife, and stated that he did not know how Debbie had gotten the other numerous stab wounds, including the fatal one. *See id*. at 5-6; N.T., 8/17/16, at 34-196; N.T., 8/19/16, at 19-29.

A jury trial proceeded, at which the Commonwealth presented testimony from Debbie's neighbors, numerous police officers and

---

[1] 18 Pa.C.S. § 2501.

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

paramedics, and Dr. Todd Luckasevic, the forensic pathologist who conducted the autopsy on Debbie's body. The Commonwealth played a copy of Appellant's video interview with police without objection.[3] Appellant called Officer Doerschner and a private detective to testify on his behalf.

The jury found Appellant guilty of Murder in the Third Degree, 18 Pa.C.S. § 2502(c), and the court sentenced him on November 9, 2016 to a term of 20 to 40 years' incarceration.

After the denial of post-sentence motions, Appellant timely appealed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

1. Whether the evidence produced at trial was sufficient to sustain the jury's verdict that Defendant has requisite malicious intent necessary to convict him of Murder of the Third Degree?

2. Whether the jury's verdict finding the Defendant guilty of Murder of the third Degree was against the weight of the evidence?

Appellant's Brief at 7 (unnecessary capitalization omitted).

---

[3] The video was not transcribed. A poor-quality copy of that interview, submitted on a USB "thumb-drive," is part of the certified record. Appellant did not object to the admission of the video and has not challenged the trial court's summation of its contents that the court provided in its Pa.R.A.P. 1925(a) Opinion.

**Sufficiency of the Evidence**

Appellant first challenges the sufficiency of the evidence, averring that the Commonwealth failed to prove that he "had the requisite malicious intent to convict him of murder of the third degree in light of the undisputed evidence supporting his claim of self-defense." *Id*. at 14. Appellant concedes that malice may be inferred from the injury caused by a deadly weapon on a vital part of the victim's body. He avers, however, that because the Commonwealth failed to introduce "evidence at trial as to the timing or sequence of the wounds sustained by the deceased or the [Appellant]," the Commonwealth failed "to disprove [Appellant's] self-defense claim or that he acted with the wickedness of disposition, hardness of heart, recklessness of consequences, and a mind regardless of social duty to sustain his conviction for third degree murder." *Id*. at 17.

In reviewing challenges to the sufficiency of the evidence, this Court must determine whether "the evidence introduced at trial and all reasonable inferences derived from that evidence, viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient to establish beyond a reasonable doubt the elements of" the crime. ***Commonwealth. v. Staton***, 38 A.3d 785, 789 (Pa. 2012) (citation omitted). Evidentiary sufficiency is a question of law, thus "our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Meals***, 912 A.2d 213, 218 (Pa. 2006) (citation omitted).

Our Crimes Code defines three degrees of homicide. *See* 18 Pa.C.S. §§ 2501, 2502. To convict a defendant of Third-Degree Murder provided in Section 2502(c), the Commonwealth "need only prove that the defendant killed another person with malice aforethought." *Commonwealth v. Santos*, 876 A.2d 360, 363 (Pa. 2005). "This Court has long held that malice comprehends not only a particular ill-will, but ... [also a] wickedness of disposition, hardness of heart, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured." *Id*. (citation and internal quotation marks omitted). "The act sufficient for third degree is still a purposeful one, committed with malice, which results in death[.]" *Commonwealth v. Fisher*, 80 A.3d 1186, 1191 (Pa. 2013).

A finding of malice based on a "recklessness of consequences" requires that "a defendant be found to have consciously disregarded an unjustified and extremely high risk that his actions might cause death or serious bodily injury." *Commonwealth v. Scales*, 648 A.2d 1205, 1206–07 (Pa. Super. 1994), citing *Commonwealth v. Fierst*, 620 A.2d 1196, 1203 (Pa. Super. 1993). *See*, *e.g.*, *Commonwealth v. Marks*, 704 A.2d 1095 (Pa. Super. 2007) (finding malice where a defendant employed a deadly weapon), and *Commonwealth v. Marquez*, 980 A.2d 145 (Pa. Super. 2009) (finding malice where a defendant perpetrated a shooting motivated by a prior incident involving the victim).

Finally, as Appellant correctly notes, malice may be inferred by the actor's use of a deadly weapon upon a vital part of the victim's body. ***Commonwealth v. Ventura***, 975 A.2d 1128, 1142 (Pa. Super. 2009).

Our Supreme Court has held that a claim of self-defense, if believed by the fact-finder, negates any *mens rea* of recklessness. ***See Commonwealth v. Fowlin***, 710 A.2d 1130, 1132-33 (Pa. 1998); ***Commonwealth v. Hilbert***, 382 A.2d 724, 731 (Pa. 1978).  A fact-finder cannot find that a defendant justifiably acted in self-defense and simultaneously hold the defendant criminally liable for crimes involving recklessness.  ***Fowlin, supra*** at 1132.

When one employs deadly force, as Appellant did here, the elements of a claim of self-defense are that the individual (1) reasonably believed that force was necessary to protect himself against death or serious bodily injury; (2) was free from fault in provoking the use of force against him; and (3) did not violate any duty to retreat. ***Commonwealth v. Mouzon***, 53 A.3d 738, 740 (Pa. 2012); ***see also*** 18 Pa.C.S § 505(b)(2) (pertaining to use of force in self-protection).

A defendant does not have a burden to prove a claim of self-defense. ***Commonwealth v. Torres***, 766 A.2d 342, 345 (Pa. 2001).  Rather, once a defendant introduces some evidence to justify a finding of self-defense, then the issue is properly before the fact-finder and the Commonwealth bears the burden to disprove the defense beyond a reasonable doubt.  ***Id***.

Viewing the evidence in the light most favorable to the Commonwealth as verdict winner, as we must, we find that the Commonwealth disproved Appellant's claim of self-defense beyond a reasonable doubt. Specifically, the Commonwealth presented undisputed evidence that several people heard a female voice screaming and yelling for help minutes before they observed her laying on the floor in a pool of blood. In addition, the forensic pathologist testified with the aid of photographs about the numerous deep stab wounds Debbie had suffered in her chest and abdomen. Dr. Luckasevic also testified that Debbie had numerous defensive wounds on her hands and arms. While Appellant attempted to establish that the wounds on Debbie's hands could have occurred during a struggle for the knife, the Commonwealth presented more than sufficient evidence to show that Appellant did not act in self-defense in repeatedly stabbing Debbie, and that the deep stab wound to her chest, which severed Debbie's pulmonary artery, established that Appellant acted with malice. Accordingly, Appellant's sufficiency challenge fails to merit relief.

**Weight of the Evidence**

Appellant next contends that the trial court erred in denying his Motion for a New Trial based on the weight of the evidence. He avers that the verdict was against the weight of the evidence because the jury "disregarded the undisputed evidence that the deceased sustained her injuries in the course of a struggle with the Defendant in which he sustained a serious

injury to his hand and that during the altercation she had possession of the knife." Appellant's Brief at 18. Without citing supporting authority or a developed argument, Appellant summarily asserts that the jury's verdict "must have been influenced by an unjustified emphasis on the injuries sustained by the deceased." *Id*.

Our standard of review for a challenge to the weight of the evidence is well settled. The finder of fact is the exclusive judge of the weight of the evidence and the fact finder is free to believe all, part, or none of the evidence presented and determines the credibility of the witnesses. *See Commonwealth v. Champney*, 832 A.2d 403, 408 (Pa. 2003). As an appellate court, we cannot substitute our judgment for that of the finder of fact. *See id.* Therefore, we will reverse a jury's verdict and grant a new trial only where the verdict is "so contrary to the evidence as to shock one's sense of justice." *See Commonwealth v. Passmore*, 857 A.2d 697, 708 (Pa. Super. 2004).

A verdict is said to be contrary to the evidence such that it shocks one's sense of justice when "the figure of Justice totters on her pedestal," or when "the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience." *Commonwealth v. Davidson*, 860 A.2d 575, 581 (Pa. Super. 2004) (citation omitted).

Furthermore,

where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Champney*, 832 A.2d at 408 (citation omitted).

"A motion for a new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict." *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000) (citation omitted).

Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Id*. (internal citations, footnote, and quotation marks omitted).

Here, the trial court noted that it had presided over the jury trial, viewed all of the evidence and testimony presented to the jury, and noted that the evidence "strongly supports the jury's verdict." Trial Ct. Op., dated 1/27/17, at 8.

Bearing in mind our standard of review when evaluating a weight of the evidence claim, we find no palpable abuse of discretion in the trial

court's denial of Appellant's motion. Further, we conclude that the jury's verdict does not "shock the conscience of the court." Appellant's weight challenge, thus, fails.

Having concluded that neither Appellant's sufficiency challenge nor his weight challenge have merit, we affirm his Judgment of Sentence.

Judgment of Sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/6/17