J-A10006-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOEL POLK | : | |
| | : | |
| Appellant | : | No. 1624 EDA 2023 |

Appeal from the Judgment of Sentence Entered May 12, 2023
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0009630-2021

BEFORE:   PANELLA, P.J.E., BECK, J., and COLINS, J.[*]

MEMORANDUM BY PANELLA, P.J.E.:                    **FILED MAY 31, 2024**

Joel Polk appeals from his judgment of sentence entered on May 12, 2023, for his convictions of two counts each of third-degree murder and possessing instruments of crime, and one count each of person not to possess firearms, firearms not to be carried without a license, and carrying firearms on public streets or public property in Philadelphia.[1] After careful review, we affirm.

Polk proceeded to a bench trial on February 27, 2023, through March 1, 2023. Briefly, the testimony at trial established that on June 24, 2021, Polk was running a drug house at 4951 Hoopes Street in Philadelphia. During the

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2502(c), 907(a), 6105(a)(1), 6106(a)(1), and 6108, respectively.

early morning hours, Polk ran out of drugs to sell. The victims, Tiyaine Kent and Keith Blake, got into an argument with Polk. Polk wanted everyone to leave because he did not have any drugs left to sell. Blake refused to leave. Polk retreated to the kitchen and returned with a firearm. He shot both victims. At the time of the shooting, there were multiple people in the house, but everyone except three ran immediately after the shooting. The three who did not run were in an upstairs bedroom and did not see the shooting.

Based upon the issues raised herein, we provide details of three notable witnesses: Robert Lee Smith, Andrea Washington, and Polk; and briefly note the police investigation.

A few days after the shooting, Robert Lee Smith walked into police headquarters and said he had information about the shooting. He provided an audio and video recorded interview. He later testified at Polk's preliminary hearing; however, he denied walking into police headquarters and claimed he did not see the shooting. He was shown his recorded interview, admitted it was him, but claimed he did not make the statements voluntarily. Smith alleged that police paid him and told him what to say. Smith, at the preliminary hearing, said he was across the street from 4951 Hoopes Street and only heard the shooting, but did not see what happened. Smith was unable to be located for trial. The Honorable Glenn B. Bronson found Smith unavailable and

ruled that the Commonwealth may utilize the preliminary hearing testimony at Polk's trial.[2]

An eyewitness, Andrea Washington, did not come forward until just prior to trial. Washington explained that she was not willing to volunteer and talk to detectives. She knew that they were looking for her, but she was scared. She only talked to detectives about this homicide after she was picked up on a warrant that had been issued for her arrest. At the time of the shooting, Washington was friends with both victims as well as Polk. She had previously dated Polk. Washington was at 4951 Hoopes Street on June 24, 2021. She used crack cocaine frequently, including just prior to the shooting. She testified that she saw Polk shoot both Blake and Kent.

Washington explained she heard the first shot and saw Kent fall to the floor. She looked and saw Polk with a "stagecoach kind" of gun, silver with a brown grip. N.T. Trial, 2/28/23, at 86. She described it as a revolver: it had a "little spinning thing." *Id.* at 87. Washington admitted to using crack cocaine and marijuana before the shooting, but said she was "very conscious and coherent" and provided a thorough description of Polk's actions in shooting

---

[2] Only portions of Smith's preliminary hearing testimony were utilized at trial because both the Commonwealth and Polk's counsel were under a mistaken belief that Smith gave two statements to police. However, it was discovered that there were two different men named Robert Smith at 4951 Hoopes Street in the early morning hours of June 24, 2021. The other Robert Smith was one of the three men who were in an upstairs bedroom and did not see the shooting. The portions of Robert Lee Smith's testimony that included the statement from the other Robert Smith were redacted and not utilized at trial.

- 3 -

both victims. *Id.* at 95, 80-86. Polk shot Kent twice, and then fired four shots at Blake. Washington was the last to run out of the house; even Polk left before she did.

Polk stipulated that he did not have a license to carry a firearm and had a previous robbery conviction which prohibited him from possessing a firearm. Polk further stipulated to the medical examiner's findings and conclusions. Specifically, Polk stipulated that Blake died of four gunshot wounds and the manner was homicide and Kent died of two gunshot wounds and the manner of death was homicide.

Polk testified in his own defense. Polk admitted to selling drugs out of 4951 Hoopes Street. He claimed, however, that he did not run the house; Washington ran the house. Polk admitted to using drugs and drinking gin prior to the murders. At trial, Polk stated that a couple, Kent and Blake, busted in the front door. He admitted to arguing with the couple, telling them to leave because he was out of drugs to sell. He denied shooting them, explaining that he walked away from them and into the kitchen to count the money he had made that evening. While in the kitchen, he heard the shots. He ran out the front door, past the shooter, with everyone else. He could not identify the shooter when asked.

The Commonwealth confronted Polk with his statement to police. Initially, Polk denied being read his rights pursuant to **Miranda**.[3] The Commonwealth played his recorded interview for him, and he conceded that the police had read him his rights before the interview. Polk then denied telling police that guys busted in the door and started shooting. Again, the Commonwealth played his recorded interview. Polk attempted to explain the inconsistencies between his statement and direct examination by saying he gave the police a "brief synopsis" of what happened. N.T. Trial, 3/1/23, at 89. The trial court, as the fact finder, did not find Polk's testimony credible.

Multiple police officers testified to their investigation of the homicide. They searched the house at 4951 Hoopes Street, located the three men hiding upstairs, but did not locate a firearm. A few projectiles were located, but no casings were found. Police believed that a revolver was used because revolvers do not eject the casings after a round is fired. The first officer on the scene, Sergeant Anthony Lazzaro, had responded to the shots fired. Upon arrival at 4951 Hoopes Street, he opened the front door and saw both victims laying on the floor. He initially believed the female was shot in the face due to the large amount of blood on her face. Following additional investigation, Polk was arrested approximately a week later, on July 2, 2021.

---

[3] **Miranda v. Arizona**, 384 U.S. 436 (1966).

At the conclusion of Polk's waiver trial, the trial court found him guilty of the previously mentioned charges.[4] The trial court sentenced Polk on May 12, 2023. On the first count of third-degree murder for Polk's shooting of Keith Blake, the trial court sentenced Polk to 20 to 40 years' incarceration. On the second count of third-degree murder, for Polk's shooting of Tiyaine Kent, the trial court sentenced Polk to life imprisonment. The trial court imposed a mix of incarceration and probation on the remaining charges, all concurrent to the second count of third-degree murder.

Polk filed post-sentence motions, which the trial court denied. Polk filed a timely notice of appeal and complied with the trial court's order to file a Rule 1925(b) statement. **See** Pa.R.A.P. 1925(b). Polk raises three errors for our review: (1) insufficient evidence to support his convictions, (2) his convictions were against the weight of the evidence, and (3) the trial court erred in permitting the Commonwealth to read portions of Robert Lee Smith's testimony from the preliminary hearing into the record at trial.[5]

Beginning with Polk's claims of insufficient evidence, our scope and standard of review is as follows:

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the

---

[4] Trial was held before the Honorable J. Scott O'Keefe.

[5] Polk challenged his convictions as against the weight of the evidence, among other claims, in his post-sentence motion, as such, the claim was preserved for appeal. **See** Motion for New Trial and Arrest of Judgment, 5/18/23, at 2-4.

verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim, the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Johnson*, 180 A.3d 474, 478 (Pa. Super. 2018) (citation and brackets omitted). Furthermore,

When reviewing a challenge to the sufficiency of the evidence, we must determine whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, and granting the Commonwealth all reasonable inferences deducible therefrom, the evidence is sufficient to establish all the elements of the offenses beyond a reasonable doubt. *Commonwealth v. MacArthur*, [] 629 A.2d 166 ([Pa. Super.] 1993); *Commonwealth v. Hilfiger*, [] 615 A.2d 452 ([Pa. Super.] 1992).

*Commonwealth v. Scales*, 648 A.2d 1205, 1206 (Pa. Super. 1994).

The testimony and identification by one witness is sufficient for a conviction. *See Commonwealth v. Barkman*, 295 A.3d 721, 733 (Pa. Super. 2023) (citing *Commonwealth v. Wilder*, 393 A.2d 927, 928 (Pa. Super. 1978) (*en banc*)). Stated another way, "a solitary witness's testimony may establish every element of a crime, assuming that it speaks to each element, directly and/or by rational inference." *Johnson*, 180 A.3d at 479 (emphasis omitted).

Initially, we must note that Polk conflates challenges to weight of the evidence and sufficiency of the evidence. Polk asserts that:

The problem with the Commonwealth's case is that despite giving the verdict winner all inferences that are most favorable, that analysis is limited by the aforementioned *Farquharson*[6] evidence (sic) when the evidence is unreliable or contradictory as to make any verdict based upon conjecture or speculation. That is the situation in this particular case.

Appellant's Brief, at 53. Polk then discusses the inconsistencies and contradictions within certain witness testimony. However, "[a] sufficiency of the evidence review … does not include an assessment of the credibility of the testimony offered by the Commonwealth." *Commonwealth v. Wilson*, 825 A.2d 710, 713-14 (Pa. Super. 2003) (citation omitted).

Our Supreme Court addressed the confusion stemming from the *Farquharson* decision in *Commonwealth v. DeJesus*, 860 A.2d 102 (Pa. 2004) and *Commonwealth v. Sanchez*, 36 A.3d 24 (Pa. 2011). In those cases, the Court clarified that challenges pursuant to *Farquharson* are challenges to the weight of the evidence, not the sufficiency of the evidence. *See Sanchez*, 36 A.3d at 37 (citing *DeJesus*, 860 A.2d at 105-07, and noting that a "challenge to [the] verdict pursuant to *Farquharson* is to weight, not sufficiency, of evidence."). As the Court explained:

The weight of the evidence is exclusively for the finder of fact, which is free to believe all, part, or none of the evidence, and to assess the credibility of the witnesses. Questions concerning inconsistent testimony and improper motive go to the credibility of the witnesses. This Court cannot substitute its judgment for that of the [fact finder] on issues of credibility.

---

[6] *Commonwealth v. Farquharson*, 354 A.2d 545 (Pa. 1976).

***DeJesus***, 860 A.2d at 107 (citations omitted).

Although Polk commingles sufficiency and weight of the evidence, our review of the record confirms there was sufficient evidence for his convictions. First, third-degree murder requires the Commonwealth to prove:

> that the defendant killed another person with malice aforethought. This Court has long held that malice comprehends not only a particular ill-will, but also a wickedness of disposition, hardness of heart, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured.

***Commonwealth v. Fisher***, 80 A.3d 1186, 1191 (Pa. 2013) (citations omitted). Malice may be inferred when a deadly weapon is used upon a vital part of the body. ***See Commonwealth v. Knox***, 219 A.3d 186, 195 (Pa. Super. 2019).

Next, "[t]he elements of [person not to possess a firearm include] (1) that the person has been convicted of an offense listed in Subsection (b) and/or falls into one of the categories of Subsection (c); and (2) that the person possesses or otherwise controls a firearm." ***Commonwealth v. Alvarez-Herrera***, 35 A.3d 1216, 1218 (Pa. Super. 2011).

Carrying a firearm without a license requires:

> the Commonwealth [to] prove: that the weapon was a firearm; that the firearm was unlicensed; and that where the firearm was concealed on or about the person, it was outside his home or place of business.

***Commonwealth v. Hewlett***, 189 A.3d 1004, 1009 (Pa. Super. 2018) (citation omitted). "[A]ny concealment, even partial, is sufficient to satisfy the

concealment element of the crime." ***Commonwealth v. Montgomery***, 192

A.3d 1198, 1201 (Pa. Super. 2018).

> Finally,

> A person violates section 6108[, carrying firearms on public streets or public property in Philadelphia,] if he carries a firearm, rifle or shotgun at any time upon the public streets or upon any public property in the City of Philadelphia, unless he has a license to do so or is exempt from the licensing requirements of the [Pennsylvania Uniform Firearm] Act.

***Commonwealth v. Hopkins***, 747 A.2d 910, 917 (Pa. Super. 2000) (citing

18 Pa.C.S.A. § 6108).

> Lastly, we have observed that:

> we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Barkman***, 295 A.3d at 731-32 (citation omitted).

Giving the benefit of all reasonable inferences and circumstantial

evidence to the Commonwealth as verdict winner, there was sufficient

evidence to establish Polk killed the victims and then left the house with the

firearm. Washington testified that she watched Polk shoot both victims. ***See***

N.T. Trial, 2/28/23, at 79. She described the firearm Polk used. *See id.* at 86-87. She saw Polk leave the house. *See id.* at 86. She left when she heard the sirens. *See id.* When police searched the house around 6 a.m. the same morning of the shooting, they did not locate the firearm. *See id.* at 55-56, N.T. Trial 3/1/23, at 28. Polk stipulated he did not have a license to carry a firearm and was previously convicted of an enumerated offense and was not permitted to possess a firearm. *See* N.T. Trial, 3/1/23, at 43. As such, it was reasonable for the fact finder to infer that Polk took the firearm with him when he left the house. *See Barkman*, 295 A.3d at 731; *Johnson*, 180 A.3d at 478. Polk's challenges to the sufficiency of the evidence have no merit.

Polk next asserts his convictions are against the weight of the evidence. *See* Appellant's Brief, at 63-69. Polk incorporates his arguments from his sufficiency analysis into his weight analysis. *See id.* at 63-64. Polk asserts the two eyewitness accounts are unreliable and he should be given a new trial. *See id.* at 65. We disagree.

> A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that

notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. Thus, to allow an appellant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the trial court.

*Commonwealth v. Juray*, 275 A.3d 1037, 1046-47 (Pa. Super. 2022) (citations and quotation marks omitted). The same standard applies to bench trials, as was the case here. *Commonwealth v. Banniger*, 303 A.3d 1085, 1095 (Pa. Super. 2023).

We have a different standard of review than the trial court:

Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Juray*, 275 A.3d at 1047 (citation omitted).

Washington testified she saw Polk shoot both victims. *See* N.T. Trial, 2/28/23, at 79. Polk asserts her testimony "seemed totally unreliable." Appellant's Brief, at 55. Polk points out inconsistencies between his own testimony and that of Washington. *See id.* Polk asserts Washington should not be believed because she did not come forward until about a year and a half after the shooting and she admitted to using drugs the evening prior and morning of the shooting. *See id.* at 55-56. Polk finally asserts that Washington

- 12 -

should not be believed because she "thought she was going to be released if she could implicate someone." *Id.* at 56.

Polk further attacks the preliminary hearing testimony and recorded interview of Smith.[7] *See id.* at 66. Polk notes the severe inconsistencies between Smith's recorded interview and his testimony at the preliminary hearing. *See id.* This included substantial differences between whether Smith even saw the shooting, whether he voluntarily spoke with police regarding the shooting, and whether he was paid to provide information about the shooting. *See id.*

The trial court, after reviewing the testimony established at trial, stated its opinion on the weight of the evidence:

> Clearly, when presented with all of the evidence at trial, this court found the defendant guilty of third-degree murder and believes that the verdict is plainly supported by the weight of the evidence. The verdict was not so contrary to the evidence as to shock one's sense of justice, nor was it so tenuous, vague and uncertain that it shocks the conscience of the court. To the contrary, the evidence in this case was compelling and substantial, and strongly supported the verdict.

Trial Court Opinion, 7/18/23, at 11. Based on a thorough review of the evidence presented at trial and the trial court's opinion, we cannot find the trial court abused its discretion.

---

[7] Smith could not be located for trial and, upon the Commonwealth's motion, portions of his preliminary hearing testimony and recorded interview were incorporated into the trial record.

The discrepancies Polk points out regarding Washington's testimony are certainly not enough to find her testimony "so tenuous, vague and uncertain" that they require a new trial. *See Juray*, 275 A.3d at 1047. She provided detailed testimony on where she was when Polk shot Kent, then Blake, and the firearm used. *See* N.T. Trial, 2/28/23, at 80-81, 85-86. She admitted to using drugs, but explained she was, at all relevant times, "very conscious and coherent." *Id.* at 95, 80-86. It is common for witnesses to violent crimes to not want to come forward. The credibility of Polk, Smith, and Washington were for the trial court to determine, as it was the fact finder. *DeJesus*, 860 A.2d at 107 (fact finder is free to believe all, part, or none of a witness' testimony). Importantly, here, the trial court did not find Polk credible. *See* Trial Court Opinion, 7/18/23, at 9.

Notably, Polk's claim that Washington thought she would be released if she implicated someone is belied by the record. Washington denied multiple times on cross-examination that she was promised anything for the information and testimony she provided. *See* N.T. Trial, 2/28/23, at 116, 117, 121, 123. We agree with Polk that Smith's preliminary hearing testimony and recorded interview provided very different accounts of the events. The trial court acknowledged that there was "contradictory evidence presented[.]" Trial Court Opinion, 7/18/23, at 9. However, after acknowledging these inconsistencies, the trial court found the verdict was not against the weight of

- 14 -

the evidence; we find no abuse of discretion. Therefore, Polk's weight of the evidence claim fails.

Polk's final allegation of error challenges the Commonwealth's use of Smith's preliminary hearing testimony at trial. *See* Appellant's Brief, at 69-81. Polk claims the admission of the preliminary hearing testimony violated his "right of confrontation since he would have approached the witness differently if he had known that the Robert Smith' (sic) statement of not seeing anything and [being] asleep, was not the Robert Smith at question." Appellant's Brief, at 72-73.

Traditionally, "[t]he admissibility of evidence is a matter addressed to the discretion of the trial court and the trial court's ruling may be reversed only upon a showing that the court abused its discretion." ***Commonwealth v. McCrae***, 832 A.2d 1026, 1034 (Pa. 2003) (citation omitted). However, "whether Appellant's confrontation rights were violated is a question of law, thus our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Leaner***, 202 A.3d 749, 775 (Pa. Super. 2019) (citing ***Commonwealth v. Brown***, 185 A.3d 316, 324 (Pa. 2018)) (footnote omitted).

Under both the United States Constitution, Amendment VI, and the Pennsylvania Constitution, Article I, Section 9, an accused is entitled to confront the witnesses against him or her. ***See*** U.S. Const. amend. VI; Pa.

Const. art. I, § 9.[8] Former testimony of a witness is not hearsay and may be used at a later hearing or trial, under the former testimony exception to the hearsay rule, provided that the party against whom it is now offered had an opportunity and similar motive to develop the testimony and cross-examine the witness. *See* Pa.R.E. 804(b)(1).

> It is well-established that the introduction of an unavailable witness's prior recorded testimony from a preliminary hearing is admissible at trial and will not offend the right of confrontation,

---

[8] The Sixth Amendment to the United States Constitution provides:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

U.S. Const. amend. VI.

Article I, section 9 of the Pennsylvania Constitution provides:

> In all criminal prosecutions the accused hath a right to be heard by himself and his counsel, to demand the nature and cause of the accusation against him, to be confronted with the witnesses against him, to have compulsory process for obtaining witnesses in his favor, and, in prosecutions by indictment or information, a speedy public trial by an impartial jury of the vicinage; he cannot be compelled to give evidence against himself, nor can he be deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land. The use of a suppressed voluntary admission or voluntary confession to impeach the credibility of a person may be permitted and shall not be construed as compelling a person to give evidence against himself.

Pa. Const. art. I, § 9.

provided the defendant had counsel and a full opportunity to cross-examine that witness at the hearing. Under the Pennsylvania Rules of Evidence, a witness is deemed unavailable if attendance at trial cannot be procured through reasonable means.

With regard to the "full opportunity to cross-examine the witness at the prior proceeding," our Supreme Court has held that, whether prior testimony was given at trial or at any other proceeding where, as here, admission of that prior testimony is being sought as substantive evidence against the accused, we conclude that the standard to be applied is that of *full and fair opportunity* to cross-examine. Where a defendant asserts that he did not have a full and fair opportunity to cross-examine the witness at the preliminary hearing, he must establish that he was deprived of "vital impeachment evidence" at or before the time of the preliminary hearing. The Commonwealth may not be deprived of its ability to present inculpatory evidence at trial merely because the defendant, despite having the opportunity to do so, did not cross-examine the witness at the preliminary hearing as extensively as he might have done at trial.

*Leaner*, 202 A.3d at 775 (citations, brackets, some quotation marks, and ellipsis omitted) (emphasis in original).

Polk does not challenge the unavailability of Smith. *See* Appellant's Brief, at 70-71. Polk "concedes that he had ample opportunity to cross-examine Mr. Smith." *Id.* at 76. Polk asserts that his confrontation rights were violated because he was unintentionally misled by the Commonwealth into believing there was only one Robert Smith who gave two very different statements to police. *See id.*

The Honorable Glenn B. Bronson held a hearing on the Commonwealth's motion to introduce the testimony of Robert Lee Smith on February 28, 2023, immediately prior to trial. Judge Bronson heard the motion to avoid any

potential prejudice to Polk, as he had waived his right to a jury trial and was proceeding with a bench trial in front of the Honorable J. Scott O'Keefe. Judge Bronson, after hearing argument and taking a recess to review the preliminary hearing transcript, found that:

> You[, trial counsel,[9]] did a cross-examination that would have been suitable for a trial, … including going over the entire correct statement [of Robert Lee Smith] line by line for everything that was important that inculpated your client as being the shooter of the two victims.
>
> I don't know what you would have done differently, but you certainly did a complete job. You had a full opportunity, and what I don't see is how the prior incorrect statement infiltrated anything else you did.
>
> \*\*\*
>
> … You went to the correct statement, and you completely explored all of the information in the statement. You elicited from this person that he didn't say any of those things. You brought out that he was high on drugs; you brought out that he didn't see the shooting.

Motion Hearing, 2/28/23, at 16-17, 22. Judge Bronson granted the Commonwealth's motion and recommended redacting any references to the statement of the other Robert Smith. **See id.** at 22-23. The Commonwealth complied and redacted those portions. **See** N.T. Trial, 2/28/23, at 131-165.

During cross-examination of Smith at the preliminary hearing, Polk elicited that Smith was heavily using drugs at the time of the shooting; that

_____

[9] Polk was represented by the same attorney at the preliminary hearing and trial.

Smith was incarcerated on pending charges; Smith's prior criminal record, including *crimen falsi* charges; that Smith was high at the time of his statement to police; that Smith did not see the shooting, because he was outside; that Smith did not walk into the police station; Smith's allegation that police picked him up, told him what to say, and paid him; and, finally, Polk confirmed that the entire previous statement was incorrect because Smith was outside the house and did not see the shooting. ***See id.*** at 145, 147, 148-152, 153, 154-156, 157-158, 159, 162-163, 158-165.

Clearly, Polk was able to explore the areas of Smith's motive to lie, veracity of his prior statement, inconsistencies between the prior statement and his testimony, and the allegations of police influence on his prior statement. As such, we agree with trial court that Polk had a full and fair opportunity to cross-examine Smith at the preliminary hearing. The fact that he was unintentionally misled into believing there was another prior inconsistent statement did not render his cross-examination any less than full and fair. Polk conducted a trial-like cross-examination that elicited facts that assisted his defense at trial – that Polk did not shoot the victims – as Smith testified multiple times, he did not see the shooting and did not know who shot the victims. Therefore, this claim has no merit.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 5/31/2024